## WILLIAM NEWSOME *vs.* JOSEPH C. DAVIS.

Suffolk. March 13. — Sept 7, 1882. ENDICOTT & DEVENS, JJ., absent.

Two certificates of stock in two corporations, for one thousand shares each, were pledged as collateral security for a debt, the pledgee having the right to sell them, by public or private sale, if the debt was not paid when due. When the debt was payable, and for some time after, the shares of one of the corporations were worthless, and the shares in the second corporation had no known or uniform price, and sometimes they could not be sold at any price. The pledgee sold all the shares at private sale for $850. In an action by the pledgor against the pledgee for negligence in the sale, the plaintiff was allowed to put in evidence of a sale of one hundred shares of the second corporation at $1.37½ per share, the day following the sale by the defendant, and a sale of fifty shares of the same stock, three days later, at $1.12½ per share. *Held*, that the defendant had no ground of exception to the admission of this evidence.

The plaintiff delivered to the defendant two certificates of a number of shares of stock in each of two corporations as collateral security for the payment of a debt, "with authority to sell the same without notice, either at public or private sale, or at brokers' board, at the option of the holder or holders hereof, on the non-performance of this promise, he or they giving me credit for any balance of the net proceeds of such sale remaining after paying all sums due from me to the said holder or holders." *Held*, in an action for loss occasioned by the defendant's negligence in the sale of the stock, that, under the authority given him, the defendant had the right, on the non-performance of the plaintiff's promise, to sell either certificate of stock, or both if the proceeds of the sale of one

did not satisfy the debt, and was not bound to divide either certificate into small lots, or to sell the stock immediately on default, or to postpone the right to sell if the stock was then depreciated in value; and that an instruction to the jury that the defendant "must use the same care, prudence and diligence in the sale of it that a prudent man would in the sale of his own property," was erroneous.

TORT. The declaration contained two counts: the first for the conversion of certain shares of stock in two mining companies, and the second for negligence in the sale of the same. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff was a dealer and speculator in stocks, and the defendant a money-lender. On March 22, 1880, the plaintiff borrowed of the defendant the sum of $750, for thirty days, and signed and delivered the following promissory note: "$772.50. Boston, March 22, 1880. Thirty days after date, for value received, I promise to pay Joseph C. Davis, or order, seven hundred and seventy-two dollars and fifty cents, and interest at the rate of three per centum per month, for such further time as said principal sum or any part shall remain unpaid, I having deposited with this obligation, as collateral security, one thousand shares Aztec Copper Co. and one thousand shares Atlas Mining Co., with authority to sell the same without notice, either at public or private sale, or at brokers' board, at the option of the holder or holders hereof, on the non-performance of this promise, he or they giving me credit for any balance of the net proceeds of such sale remaining after paying all sums due from me to the said holder or holders. In case of depreciation in the market value of the security hereby pledged, or that may hereafter be pledged for this loan, I hereby agree to deposit a further amount of security on demand, so that the market value shall always be at least twenty per cent more than the amount of the note. And, failing to deposit such additional security, this note shall be deemed to be due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding; and the holder or holders may immediately reimburse themselves by sale of the security. And it is further agreed that the holder or holders hereof may purchase at said sale."

The plaintiff delivered to the defendant the two certificates of stock named in the note, with powers of attorney, in the

usual form, authorizing the transfer of the shares to the defendant on the books of the company; and this was immediately done. The defendant, at the time of the delivery of the note, gave to the plaintiff a receipt for the shares of stock, agreeing to give them to him on payment of the note. The interest for thirty days was added to the amount lent, thus making the note $772.50.

The note was not paid when it became due; and the defendant offered evidence tending to show that, many times during the months of May, June and July, 1880, he demanded payment of the note and debt of the plaintiff; that he requested him to take up the stock, and notified him that, unless he did so, he should sell the shares of stock the first opportunity he had to do so; that the plaintiff often promised to pay the note, but did not pay it or any part of it, or the interest; that the defendant made efforts to sell said stocks or shares by public and also by private sales during these three months, but could not get a bid or any offer for them until July 30, 1880, on which day he sold said stock to Charles E. Fuller, a stock-broker, for $850, enough to pay the amount of the note and interest to that time, and on that day he delivered the certificates of stock to Fuller, with powers of attorney signed in blank, which Fuller afterwards filled up for their transfer on the books of the company, and the defendant applied said $850 to the payment of the note and debt. It appeared in evidence, and was not controverted, that said stocks had no known or fixed or uniform price; that they were speculative stocks, for which there was sometimes a demand or sales, and sometimes there was no call or demand for them, and it was sometimes impossible to sell them at any price.

The judge ruled, and it was not controverted, that the defendant had the right, under the agreement in the note, to sell these stocks at private sale without demand; but the plaintiff contended, and offered evidence tending to show, that the defendant did not, in said sale to Fuller, exercise due care and diligence, and make proper efforts in such sale to get all he could for them; and that they were sold all at one time for less than they ought to have been, and the plaintiff in consequence sustained a loss; and that, if the defendant could have realized more than

he did, by selling the stocks or shares in small lots from time to time, he should have sold them in that way.

It did not appear that there was any market for or any sales of the Atlas Mining Company stock during the summer of 1880, or that it was of any value. The plaintiff offered evidence of a sale of Aztec Copper Company stock on July 31, 1880, of one hundred shares at $1.37½ per share, and also of a sale on August 3, 1880, of fifty shares at $1.12½ per share, both said sales being in Boston. The defendant objected to this evidence, but the judge admitted it, on the ground that any sales made about the time of the defendant's sale to Fuller were competent; and the defendant excepted. The defendant also offered evidence, which was not controverted, that at no time did the plaintiff give to the defendant any direction or suggestion how or what was the best way or method of selling these stocks. There was no evidence of any sale of said stocks at any time of over one hundred shares in any one day, or in any one lot, except said sale to Fuller.

The defendant asked the judge to instruct the jury as follows: " 1. By the terms of the note the defendant was not obliged to sell at public sale or at the brokers' board. 2. The defendant was not obliged to give the plaintiff notice of the sale. 3. It was the plaintiff's duty to pay the note and take up the stock when it became due, and if he refused and neglected to do so, but suffered the stock to remain and be sold, after being requested to take it up, and after being told that it would be sold if he did not take it up, it was his own fault if it was sold. 4. If the plaintiff knew of any way in which the defendant could have sold it for a higher price, it was his duty to have told the defendant or his agent of that fact, and it was the defendant's right to sell all the stock, and he was not obliged to wait until he could sell it in small lots. 5. If the plaintiff could have sold the stock for any more than he pledged it to the defendant for, it was his duty to have taken up his stock and paid the defendant's note. 6. This action as to the first count cannot be maintained, as the defendant had an interest in the stock, and the right under the note against the plaintiff to sell the stock at private sale. 7. Upon the contract contained in the note and receipt, this action cannot be maintained on the

second count. 8. Upon the whole evidence, this action cannot be maintained."

The judge gave the first and second requests for instructions; refused the third and fourth, saying that they were matters of fact for the consideration of the jury, and refused to give either the sixth, seventh or eighth requests; and ruled that the defendant was bound to use due diligence and care in the sale of said stock to protect the rights of the plaintiff; that he must use the same care, prudence and diligence in the sale of it that a prudent man would in the sale of his own property; and that if the defendant did this he was not liable, but, if he did not, he was liable to the plaintiff for the loss, if any, which the plaintiff had sustained by such sale.

The jury returned a general verdict for the plaintiff, for $668; and the defendant alleged exceptions.

*J. B. Richardson*, for the defendant.

*J. E. Cotter*, for the plaintiff.

FIELD, J. It does not appear from the exceptions that the sales of the Aztec Copper Company stock were not rightly admitted in evidence. The sales may have been at public auction, and they were near in point of time; and no such facts appear as enable us to say that the court erred in admitting them. *Benham* v. *Dunbar*, 103 Mass. 365. *Kent* v. *Whitney*, 9 Allen, 62. *Cahen* v. *Platt*, 69 N. Y. 348.

Whether the third request for instructions should have been given depends upon what it means. If it means that, the plaintiff being in default, the defendant had a right to sell the stock, it should of course have been given. If it means that, the plaintiff being in default, the defendant had the right to sell the stock in any manner and for any price he saw fit, without taking any pains to obtain for it what it was worth, it should not have been given.

Apparently the real contest between the parties was whether the defendant was bound to sell the stock in small lots if thereby he could get more for it, and whether the instruction of the court, that " the defendant was bound to use due diligence and care in the sale of said stock to protect the rights of the plaintiff, that he must use the same care, prudence and diligence in the sale of it that a prudent man would in the sale of his

own property," was a correct and adequate statement of the law.

Under the authority given to the defendant, he had the right, on the non-performance of the promise of the plaintiff, to sell either certificate of stock, or both if the proceeds of the sale of one did not satisfy the debt, and was not bound to divide either certificate up into small lots, even if a prudent owner, having regard solely to his own interests, would have done so.

The defendant was not bound to sell the shares immediately on default, but he had a right to sell them then if he chose, and he was under no obligation to the plaintiff to postpone the exercise of this right, if the stocks were then depreciated in value. The defendant was bound to exercise reasonable care and diligence to obtain whatever the stocks were worth at the time he sold them. It is possible that, if a prudent person ever became the owner of such stocks, he might think it best to hold them, under the expectation that they would rise in value, but the defendant was not required to do this.

Under the instructions given by the court, as applied to the evidence and to the contentions of the parties, the jury may have been misled into the belief that the duty of the defendant was to exercise the same prudence and diligence which a prudent owner would exercise in determining the time when he would sell his own stocks, and whether he would sell each certificate of stock as a whole or in parcels; and for this reason the exceptions must be sustained.

It is unnecessary to consider whether there was any evidence that would support the count in the nature of trover.

*Exceptions sustained.*