PERCY A. ATHERTON, trustee, *vs.* HENRY P. EMERSON.

Suffolk.     March 17, 18, 1908. — June 8, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Pleading and Practice*, Exceptions to master's report, Bill. *Evidence*, Remoteness, Presumptions and burden of proof, Circumstantial. *Witness*, Refreshing recollection. *Bankruptcy*, Preference. *Corporation*, Officers and agents. *Fraud. Equity Jurisdiction.*

Upon a reservation by a single justice of this court for consideration by the full court of exceptions to findings of fact contained in the report of a master to whom a suit in equity was referred, the report containing all the evidence introduced before the master, such findings will not be revised unless they are plainly wrong, although upon some of the issues the full court might not have come to the same conclusions as were reached by the master.

At the hearing before a master of a bill in equity by the trustee in bankruptcy of a

corporation against one who was president, treasurer, general manager and a member of the board of directors of the corporation, to recover the value of property alleged to have been conveyed by the corporation to the defendant by way of preference, it appeared that an involuntary petition against the corporation, seeking to have it adjudged bankrupt, was filed on March 16, 1904, and that appraisers appointed by the bankruptcy court appraised the assets of the corporation on April 11, 1904. A material question was whether the corporation was insolvent on December 10, 1903, and the plaintiff offered as evidence to prove such insolvency the testimony of the appraisers as to what was the value of the property which they had seen and examined. The master admitted the evidence, and stated in his report that it was of slight probative value but was enough " to turn the scale," and the defendant excepted. *Held,* that the evidence might have been found by the master not to be too remote under the circumstances, and that the exception therefore must be overruled.

Two of three appraisers, who had been appointed by the bankruptcy court to appraise the estate of a bankrupt and had filed their report, were called by the plaintiff to testify at a hearing before a master of a bill in equity where such value was a material fact, as to the value of the property at the time of the appraisal. One of them, being handed a certified copy of the report of the appraisers, which the master expressly said was to be used only to refresh the recollection of the witnesses, stated that the amounts in the copy were correct, and then stated what the amounts were. The other witness stated that he could not remember what the value was, but that it was as stated on the certified copy of the appraisers' report. The certified copy then was offered in evidence and admitted " as being an attested copy of the appraisal of these men appointed by the court." The third appraiser was not called. The defendant excepted to the admission of the certified copy of the report of the appraisers in evidence. A single justice of this court, before whom the exception was heard, reserved the case for consideration by the full court. *Held,* that, while neither the original nor a certified copy of the appraisal was admissible as in itself evidence of the value of the property appraised, it did not in this instance appear to have been offered or admitted as such evidence, but merely as a statement of the evidence intended to be given by the second witness; and that therefore there was no error in its admission.

A petition was filed on March 16, 1904, in the bankruptcy court against a corporation seeking to have it adjudged a bankrupt, and, because the petition was contested and the adjudication and the appointment of a trustee were thereby delayed, the court appointed a receiver to take charge of the assets in the meantime. The receiver, after reasonable efforts to get the highest price obtainable for the assets, sold them to one who had been the president, treasurer, general manager and a member of the board of directors of the corporation. At the hearing before a master of a bill in equity by a trustee in bankruptcy of the corporation, who was afterwards appointed, against him who had been president, treasurer, general manager and a member of the board of directors of the corporation, to recover the value of certain property conveyed to the defendant by way of preferences by the corporation before the filing of the petition, testimony as to the amount for which the assets were sold by the receiver to the defendant was admitted as evidence on the question of what the value of the assets was, and the defendant excepted. *Held,* that the evidence was not too remote, and was admissible.

Exceptions to the rulings of a master, to whom a suit in equity has been referred, upon the admissibility of evidence not plainly affecting his conclusions upon the real merits of the suit, are not readily to be sustained.

Both the intent of a debtor to make the preference referred to in §, 60, a, b, of the bankruptcy act of 1898, as amended by U. S. St. 1903, c. 487, and the reasonable cause on the part of the creditor to believe that such preference was intended, may be shown by circumstantial evidence in a suit brought by the trustee to recover the property so transferred or its value.

From evidence before him at the hearing of a suit in equity by the trustee in bankruptcy of a corporation against one who had been president, treasurer, general manager and a member of the board of directors of the corporation, to recover the value of property alleged to have been conveyed to the defendant by the corporation as a preference under § 60, a, b, of the bankruptcy act of 1898, as amended by U. S. St. 1903, c. 487, a master to whom the suit had been referred found that, without evidence which was introduced before him of the value assigned to the corporation's assets by appraisers appointed in the bankruptcy proceedings, and of the amount for which a receiver who was appointed in those proceedings had sold the assets to the defendant, the probative weight of which evidence he found was "light," he would "not have found that the corporation was insolvent" at the time the alleged preference was made, or that the defendant had reasonable cause to believe it to have been insolvent and that it intended to give him a preference; but he also found that, at the time the conveyance was made, the defendant had reasonable cause to believe that the corporation was insolvent and intended to prefer him, since a state of things then existed and then was known by the defendant, which, if known by a business man of ordinary prudence and intelligence, would have caused him to believe that the corporation was insolvent and intended to give a preference. And he ruled that the defendant should return to the plaintiff the value of the property conveyed. *Held*, that, upon the facts found, there was no error in the ruling.

One who was president, treasurer, general manager and a member of the board of directors of a corporation, and also was engaged in a business similar to that in which the corporation was engaged, was, at a time within four months of the filing of a petition to have the corporation adjudged bankrupt, (upon which an adjudication afterward was made,) an indorser upon notes of the corporation and knew that the corporation was insolvent, but, knowing that the corporation intended to prefer him, he accepted from the corporation a deed of certain of its property and of its book accounts, which purported to be in consideration of loans to be made in the future, but which was made in part at least to secure past indebtedness of the corporation to him. He also received in the same period and under the same circumstances payments of balances due him from the corporation in excess of what he owed it. In a suit in equity brought against him by the trustee in bankruptcy of the corporation to recover the value of the property thus conveyed, the amount collected on the book accounts, and the payments to him on his account with the corporation, it was *held*, that the transactions were preferences under § 60, a, of the bankruptcy act of 1898 as amended by U. S. St. 1903, c. 487, and that, under § 60, b, the trustee might avoid them, and recover from the defendant the value of the property of the corporation thus conveyed and paid to the defendant.

One who was the president, treasurer, general manager and a member of the board of directors of a corporation, an indorser upon a promissory note of which it was the maker and a guarantor of certain of its bills payable, knowing that the corporation was insolvent and that it intended, in preference to other creditors, to relieve him from his liability as such indorser and guarantor, himself as treasurer of the corporation paid the note at its maturity and the account which he

had guaranteed, at a time within four months of the filing in the bankruptcy court of a petition that the corporation be adjudged bankrupt, upon which an adjudication afterwards was made. Neither the payee of the note nor the creditor thus paid had reason to believe that a preference was intended by the payment. *Held,* that such payments were preferences within the meaning of § 60, a, of the bankruptcy act of 1898, as amended by U. S. St. 1903, c. 487, and that, under § 60, b, the trustee in bankruptcy could recover in a suit in equity against the indorser and guarantor, as one who was " benefited thereby," the amount of the payments.

Upon a reservation by a single justice of this court for consideration by the full court of an exception to a ruling of a master, to whom a suit in equity had been referred, in which he refused to allow a certain claim of the plaintiff on the ground that the allegations of the bill were not broad enough to include the claim, such exception must be sustained if it appears that the defect in the allegation in the bill was one which might have been taken advantage of by demurrer or one that might have been cured by a merely formal amendment, and if, on the facts as found by the master, the plaintiff was entitled to relief.

In a suit in equity by the trustee in bankruptcy of a corporation against one who had been its president, treasurer, general manager and a member of its board of directors, to recover the value of certain alleged preferences received and profits made by him in violation of his official duties, it appeared that, at a time within four months of the filing of the petition in bankruptcy, the defendant, knowing of the corporation's insolvency, purchased a claim from a creditor at less than its face value, and then as treasurer paid himself its full face value. A master to whom the suit was referred ruled that the plaintiff could recover, but that his recovery was limited to the profits the defendant made on the transaction, and both the plaintiff and the defendant excepted. *Held,* that both exceptions must be overruled, since the master might have found that the defendant in purchasing the claim was acting as agent of the corporation; *but,* that, if the master had found that in making the purchase the plaintiff had been acting for himself and not on behalf of the corporation, the entire amount paid to him in settlement of the account might have been recovered by the plaintiff as a preference under § 60, a, b, of the bankruptcy act of 1898 as amended by U. S. St. 1903, c. 487.

A master, to whom was referred a suit in equity brought by the trustee in bankruptcy of a corporation against one who was its president, treasurer, general manager and a member of its board of directors, to recover an amount of money alleged to have been paid to the defendant as salary in excess of the fair value of the services of the defendant to the corporation, found that, by a vote of the directors of the corporation shortly after its organization, the defendant was to receive annually as salary a sum equal to $5,000 and six per cent of the amount of capital invested by him, and that the other officers were to receive as their salaries certain amounts and like percentages of the capital invested by them ; that subsequently, as from time to time he acquired additional shares of the capital stock of the corporation, the directors voted to the defendant as additions to his salary amounts equal to six per cent of the par value of the stock thus acquired by him ; that a fair value of the services of the defendant to the corporation was $5,000; that the corporation never had declared any dividend, *eo nomine.* *Held,* that the plaintiff was entitled to recover all sums in excess of $5,000 per year paid to the defendant as salary, *but* that it could not be ruled as a matter of law that such voting of salaries amounted to a declaration of a dividend.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk September 18, 1905, by the trustee in bankruptcy of the Eastern Commission and Importing Company, seeking to recover from the defendant the amount and value of certain payments and transfers of property alleged to have been made by the company by him, while he was its president, treasurer and general manager, as unlawful preferences under the national bankruptcy act.

The case was referred to a master, who filed a report and, with it, a transcript of all the evidence introduced before him, which filled nine hundred and thirty-six pages of the printed record.

It appeared that a creditor's petition was filed in the District Court of the United States for the District of Massachusetts, to have the corporation adjudged a bankrupt, on March 16, 1904. The petition was contested by certain attaching creditors, and, in consequence of this contest, the corporation was not adjudged a bankrupt until March 16, 1905.

The master found and reported that the plaintiff was entitled to recover from the defendant

| | |
|---|---:|
| The value of warehouse receipts for merchandise stored by the Quincy Cold Storage Company . . | $8,629.48 |
| Amount collected on certain choses in action . . . | 4,652.92 |
| Preferential payments of money by the corporation to the defendant on open account . . . . . . | 1,771.87 |
| Profits of the purchase by the defendant of the accounts of the Daisy Mfg. Co. and Leo Schlessinger and Co. . . . . . . . . . . . . . . . . | 510.33 |
| Salary paid to the defendant in excess of a fair compensation for services rendered . . . . . . . | 9,344.81 |
| Moneys paid to payees of notes indorsed by the defendant . . . . . . . . . . . . . . . : | 51,000.00 |
| A total of . . . . . . . . . . . . . | $75,909.41 |

And he refused to rule that certain sums paid by the corporation, as stated in the opinion, upon certain of its accounts which the defendant had guaranteed, should be paid to the plaintiff by the defendant.

That part of the record which has reference to the admission

in evidence of the certified copy of the bankruptcy appraisal, referred to in the opinion, is as follows:

Q. (of the witness Hatch in direct examination). "Now, can you give us what was a fair value of the assets?" A. "I should think that was." — Q. "And will you give it to us?" A. (looking at the paper handed to him by the plaintiff's counsel). "This, I understand, is a copy of the appraisal that we turned in? Will I just read the amounts?" — Q. "If those are right?" A. "I should say they were. It is some time since I have seen these figures, it is two years or more; it says — "

Defendant's Counsel: "I object." The Master: "You are proposing to give me the figures, aren't you?" Plaintiff's Counsel: "Yes." The Master: "What is your objection?" Defendant's Counsel: "My objection is he is not answering the question. He says he cannot tell anything about it, it is two years ago, and he starts off to read a paper." Plaintiff's Counsel: "I have shown him a certified copy of his appraisal." Defendant's Counsel: "I do not know what it is." Plaintiff's Counsel: "I will show it to you." Defendant's Counsel: "I don't care anything about it."

Q. (by the plaintiff's counsel). "I am showing you, Mr. Hatch, something to refresh your recollection, a certified copy of your appraisal as it was filed in the bankruptcy court" — The Master: "I think the certified copy itself is admissible." Plaintiff's Counsel: "I am going to offer it." The Master (to the witness): "You filed your appraisal in court?" A. "Yes, sir." — Q. "Now, can you give us the value that you put on?" A. "This certified copy says [reading therefrom]. . . ." — Q. "Those were fair values of the articles that you appraised?" A. "In our judgment." . . .

Q. (of the witness Mason in direct examination). "You may look at that paper and then tell us what were the fair values of the articles that you appraised there, or the stocks that you appraised." A. "I do not see why I should have to answer that, it is here, isn't it?" — Q. "We want to get it on the record?" A. "I really don't catch the idea." — Q. "Will you tell us after the appraisal you made what were the values, or fair values, of the articles you appraised?" A. "After I appraised them?" — Q. "Yes." A. "You mean — " — Q. "At that

time." A. "You mean the bulk of the stock?" — Q. "Yes."
A. "I really don't remember what the stock amounted to; whatever is here, I suppose." — Q. "Now, refreshing your recollection from that, tell us?"

The Master (addressing defendant's counsel): "You object to using that paper as strictly refreshing his recollection?" Defendant's Counsel: "I don't know anything about the paper."

The Master (addressing plaintiff's counsel): "You can show what the report was by the certified copy. You have shown he was appointed by the court and made an appraisal. I think now you may introduce a certified copy to show what it is." Plaintiff's Counsel: "You will exclude that question?" The Master: "I think I better. He can use that paper strictly to refresh his recollection." Plaintiff's counsel: "Then let me take an exception."

Q. (of the witness). "The values which you put on your appraisal which you returned to the court were fair values?" A. "That is what I thought, yes."

Plaintiff's Counsel: "Then I will offer this certified copy as being the return he made to the court." The Master: "How many appraisers were there?" Plaintiff's Counsel: "Two anyway." The Master: "I will receive that paper when you show by another one of the appraisers, — are you going to call the other?"

Q. (of the witness). "Was there a third appraiser?" A. "I think so, three of us." — Q. "Was that Mr. Edward Hatch?" A. "Hatch is one. I don't remember the other. The other was a lawyer." — Q. "Will you look and see if you remember his name?" A. "I do not remember. I could remember him if I saw him, I don't remember his name."

Plaintiff's Counsel: "I offer that." The Master: "I will receive that as being an attested copy of the appraisal of these men appointed by the court." Defendant's Counsel: "That I want an exception to."

The copy of the appraisal thus introduced in evidence showed the appointment by the judge of the District Court of the United States for the district of Massachusetts of Reginald C. Heath of Brookline, and Edward Hatch and Mark Mason of Boston to act

as appraisers, their oath to faithfully perform their duty, and the following statement signed by them on April 11, 1904 : " We, the undersigned, having been notified that we were appointed to estimate and appraise the real and personal property aforesaid, have attended to the duties assigned us, and after a strict examination and careful inquiry, we do estimate and appraise the same as follows :

| | |
|---|---:|
| Stock and merchandise in store 69 Bedford St. Stock and merchandise in storage. Partly pledged as collateral . . . . | $16,650.00 |
| Cash on hand . . . . . . . . . . . | 124.56 |
| Fixtures and office furniture . . . . . | 500.00 |
| Accounts receivable. Partly pledged as collateral . . . . . . . . . . . | 22,000.00 |
| Merchandise in hands of H. P. Emerson & Co. pledged as collateral . . . . . | 1,140.25 |
| | $40,414.81 " |

The findings of the master with reference to the defendant's salary were in substance that, at the organization of the corporation, it was agreed and voted that the defendant should have a salary of $5,000 per year and six per cent of the capital contributed by him, and that others of the officers should have salaries similarly computed. Subsequently, as from time to time he gained control of additional shares of the capital stock of the corporation, there were votes of the directors that his salary be increased by an amount equal to six per cent of the par value of such additional stock. "The evidence as to the fair value of Mr. Emerson's services as treasurer and general manager is not satisfactory. It appeared by the evidence that during the time that he had been in business for himself that his profits had considerably exceeded his salary which the company agreed to pay him. These profits, however, included not only compensation for services but capital employed in his business. Considering Mr. Emerson's absence on his trip around the world and all the circumstances of the case, I find that an annual salary of $5,000 is a fair compensation for services rendered by Mr. Emerson to the company. . . . He has drawn, therefore, $9,344.81 in excess of a reasonable compensation of

services rendered to the company. The votes authorizing contracts for salaries for Mr. Emerson and the other stockholders of the Eastern Commission and Importing Company did not purport to be votes making or declaring dividends, and cannot be so construed. These votes were only means of fixing salaries and enabling the employees of the company to reach some agreement as to their annual salaries. No dividends *eo nomine* were ever made or declared by the corporation."

Other material findings and rulings by the master are stated in the opinion. Both parties excepted to the report. The substance of the exceptions, of which there were ten by the plaintiff and one hundred and two by the defendant, is stated in the opinion.

There was a hearing before *Sheldon,* J., who reserved the case for consideration by the full court.

*E. A. Whitman & L. M. Friedman,* (*H. W. Barnum* with them,) for the plaintiff.

*E. R. Anderson,* (*A. T. Smith* with him,) for the defendant.

SHELDON, J. The plaintiff is the trustee in bankruptcy of the Eastern Commission and Importing Company, a corporation organized under the laws of New Jersey, but carrying on its business in this Commonwealth. The defendant was the president, treasurer, general manager and a director of the company. The bill is brought to recover from the defendant the amount and value of certain payments and transfers of property claimed to have been made to him by the company as unlawful preferences under the national bankruptcy act and also in violation of its charter and by-laws and of his official duties. U. S. St. 1898, c. 541. The master to whom the case was referred has sustained most of the contentions of the plaintiff; and if his report shall be confirmed, the plaintiff will be entitled to recover a large sum from the defendant. It will therefore be convenient in the first instance to consider the contentions made by the defendant upon the report and those of his exceptions to the report which are now insisted upon by his counsel.

It may be premised, however, that, so far as these exceptions are based upon the claim that the master's findings upon questions of fact should upon the evidence have been other than they were, we have not found that they were well taken. The

familiar rule that the master's findings cannot be set aside or reversed unless it is shown that they are plainly wrong, is especially applicable in a case where the testimony was so voluminous and the controverted questions so many and so earnestly disputed as is shown by the record before us. Applying that rule, a careful examination of the evidence does not show such error in any of the findings as to make it our duty to set them aside. It may be that upon some of the issues presented we should not have come to the same conclusions as those which the master has reached; but we cannot say that any of them are plainly wrong. Nor would it serve any useful purpose to go over in detail the evidence upon any of these questions. As to the questions of law which have been discussed in the elaborate arguments of the parties, we will consider them in connection with the findings of the master.

One of the fundamental questions arises upon the finding of the master that on December 10, 1903, the company was insolvent within the meaning of the bankruptcy act, that is, that its liabilities then exceeded a fair valuation of all its property. Bankruptcy Act, § 1. *Pirie* v. *Chicago Title & Trust Co.* 182 U. S. 438. *Churchill* v. *Wells,* 7 Coldw. 364. *In re Hines,* 144 Fed. Rep. 142. The master also found that all payments of money and transfers of property made by the company to the defendant after that date were intended to give him a preference, and that he had reasonable cause to believe that the company was insolvent and intended to give him a preference. But the master admitted upon these issues evidence of the values of the company's assets as estimated by the appraisers appointed in the bankruptcy proceedings, together with evidence as to purchases and sales made by the company in the intervening time and the condition of the stock, for the purpose of showing the market value of the goods in early December, 1903 ; and he has reported that " though the probative weight of this evidence was light, it was sufficient to turn the scale," and that without it he " should not have found that the company was insolvent within the meaning of the bankruptcy act on December 10, 1903," and that the defendant had reasonable cause to believe the facts above stated.

It appears by the report of the evidence that in the bank-

ruptcy proceedings against the company three appraisers, Messrs. Heath, Hatch and Mason, were appointed to appraise its property, and that they did so on April 11, 1904, and returned their appraisal to court. Two of these appraisers were called to testify as to the value of the property which they had seen and examined. The first witness, Hatch, was asked to state what in his judgment was the fair value of the property, and to refresh his recollection in answering from a certified copy of the appraisal made by himself and his associates. He answered that the amounts stated in that certified copy were correct, and then stated what those amounts were. Mr. Mason, after some general testimony as to the character of the stock, was shown the same certified copy, and was asked what were the fair values of the articles appraised. In substance he answered that he could not remember, that it was as stated on the paper shown him, i. e., the certified copy of the appraisal which he had joined in making. The defendant's counsel, in answer to a question from the master whether he objected to the witness's using that paper as strictly refreshing his recollection, answered, "I don't know anything about the paper." The witness then said in answer to a further question, whether the values put upon the appraisal which was returned to the court were fair values, "That is what I thought, yes." Thereupon the certified copy of the appraisal was offered in evidence, and admitted, "as being an attested copy of the appraisal of these men appointed by the court." The third appraiser was not called.

These two witnesses might well be found to have themselves sufficient acquaintance with such articles to testify about their value. The evidence as to the value of the property in April, 1904, might be found not to be too remote to bear upon its value in December, 1903, especially in view of the other evidence in the case. *In re Elmira Steel Co.* 109 Fed. Rep. 456. There is no doubt, however, that under our decisions neither the appraisal itself nor a certified copy thereof was competent as in itself evidence of the value of the property appraised. *Kafer* v. *Harlow*, 5 Allen, 348. *Adams* v. *Wheeler*, 97 Mass. 67. *Bradford* v. *Cunard Steamship Co.* 147 Mass. 55. It was not made by the defendant, nor was he privy to it, as in *Sanborn* v. *Baker*, 1 Allen, 526, *Leighton* v. *Brown*, 98 Mass. 515, 516, *Wright* v.

*Quirk*, 105 Mass. 44, and *Brigham* v. *Evans*, 113 Mass. 538. But it does not appear that this paper was admitted as itself furnishing any evidence. The master had expressly said that it was to be used only to refresh the recollection of the witness. But the witness Mason would go no further than to say in substance that the values stated on the paper were in his opinion the fair values of the articles. Under these circumstances, we cannot say that the master might not admit the paper, as being in reality a statement of the testimony of the witness. *Roswald* v. *Hobbie*, 85 Ala. 73. It is difficult to determine exactly what was meant by everything that was said between the master, the counsel on each side, and the witness; but, taking the statement of the evidence and the language of the report together, we cannot say that it appears that this paper was received or treated by the master as itself furnishing any evidence of the value of the articles appraised, or as being anything more than a statement of the evidence intended to be given by the witness Mason; and accordingly the defendant's exception to its admission cannot be sustained.

Evidence that the assets, after the appraisal and after reasonable efforts, were sold by the receiver in bankruptcy to the defendant for $36,000, on April 16, 1904, was competent on the question of their value. The sale does not appear to have been too remote, and it was made to the defendant himself, by an officer of the court, whose duty it was to get the highest price obtainable, and who had made reasonable efforts for that purpose. The defendant concedes that a price obtained at a sale by auction is some evidence of value. *Brady* v. *Finn*, 162 Mass. 260, 267. *Baker* v. *Seavey*, 163 Mass. 522. The price obtained at a sale like this cannot be less competent upon the question of value than if the sale had been a forced one to the highest bidder, as in *Brady* v. *Finn*, *ubi supra*. And see *Kent* v. *Whitney*, 9 Allen, 62. *Newsome* v. *Davis*, 133 Mass. 343. *Ridge Avenue Bank* v. *Studheim*, 145 Fed. Rep. 798. The very ground of the rule that the value of real property may be shown by evidence of actual sales of similar property is that such sales, whether public or private, are a trustworthy guide to the value of the property sold. *O'Malley* v. *Commonwealth*, 182 Mass. 196.

The testimony of what was said and done by the defendant or by others with his knowledge was competent, in connection with the evidence of the course of business of the corporation, to show his connection with that business, his acquaintance with what was done, his control of its affairs so far as he had such control, and his knowledge of the condition of its affairs and of its impending insolvency. And as one step towards establishing the liability of the defendant, it was competent to show the financial standing of the company and its actual insolvency four months before the beginning of the bankruptcy proceedings. We cannot find that the master erred as to these matters in admitting any of the evidence complained of. *In re Englefield Colliery Co.* 8 Ch. D. 388, 401. Exceptions to the rulings of a master upon the admissibility of evidence not plainly affecting his conclusions upon the real merits are not readily to be sustained. *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182. *Long* v. *Athol,* 196 Mass. 497.

The master's finding that the defendant had reasonable cause to believe that the company was insolvent and intended to give him a preference was based upon his ruling that this meant the existence of a state of things which, if known by a business man of ordinary prudence and intelligence, would cause him to believe that the bankrupt was insolvent and intended to give a preference. This ruling was correct. *Allen* v. *French,* 178 Mass. 539. *Buchanan* v. *Smith,* 16 Wall. 277. *In re Pfaffinger,* 154 Fed. Rep. 523. And see the cases collected in 5 Cyc. 370. But the defendant argues that, as the master has stated that he could not himself have found the insolvency of the company and the defendant's reasonable cause to believe this fact and that a preference to him was intended, without taking into account the appraised value of the company's assets and the amount realized upon the sale to the defendant in April, 1904, so the defendant, who could not have known these things in December, 1903, before they took place, cannot be charged with a knowledge and a reasonable cause of belief which the master could not then have found. This contention however rests upon a misconception of the master's report. He has found that the defendant was fully acquainted from the first with the business of the company, and had actually reasonable

cause to believe that it was insolvent and intended to give him a preference. The subsequent occurrences that have been stated were merely evidence which, in connection with other evidence, showed to the master the actual insufficiency of its assets to pay its debts. They were subsequent actions which showed the prior condition of insolvency. It by no means follows, simply because the master could not have found that prior condition without them, that the defendant, with his greater knowledge of the company's affairs and of the real value of its stock in trade and choses in action, had not the reasonable cause of belief which the master found that he had. Many of the facts found by the master, taken by themselves, were not conclusive evidence, though known to the defendant, of its actual insolvency, or of the reasonable cause of belief on his part. Some of them, without more, would not even have warranted such a finding. *Pirie* v. *Chicago Title & Trust Co.* 182 U. S. 438. *Grant* v. *National Bank*, 97 U. S. 80. *In re Pettengill & Co.* 14 Am. Bankr. Rep. 757, 762. *Martin* v. *Bigelow*, 7 Am. Bankr. Rep. 218. But both the debtor's intent and the preferred creditor's reasonable cause of belief may be shown by circumstances. *Hardy* v. *Gray*, 144 Fed. Rep. 922, 926. *Deland* v. *Miller*, 11 Am. Bankr. Rep. 744. The defendant was not a stranger to the affairs of this company. As its president, treasurer and general manager, besides being a director, there was at least a presumption of fact that he knew of its actual financial condition. *Graham* v. *Middleby*, 185 Mass. 349, 356. *Hill* v. *Marston*, 178 Mass. 285, 286. To the same effect are *Clay* v. *Towle*, 78 Maine, 86, *James Clark Co.* v. *Colton*, 91 Md. 195, and *Consolidated Tank Line Co.* v. *Kansas City Varnish Co.* 45 Fed. Rep. 7, 11. The cases which hold that a director is not chargeable as matter of law with the exact knowledge of the business transactions of the corporation or the contents of its books and papers, are beside the point and need not be considered.

On the facts found by the master, the transfer of the merchandise stored in warehouse, made on January 16, 1904, and the assignment of the choses in action made February 1, 1904, were really made to secure past debts due to the defendant from the company. The proceeds of the notes indorsed by him on the last day were applied almost entirely to taking up the company's

checks held by him; and it must now be taken that they were intended so to be applied. The fact that the papers purported to be either partly or wholly for loans to be made or for contemporaneous indorsements, cannot avail against the real transactions. If a part of the consideration had been for present or future loans or indorsements, but the transfers were made also to secure former indebtedness, we need not consider whether under the present bankruptcy act the transfer and assignment would have been wholly invalid as to this plaintiff. See *Bolster* v. *Graves*, 189 Mass. 301; *Hill* v. *Marston*, 178 Mass. 285; Bankruptcy Act, § 60 c; *Reed* v. *Helois Carbide Specialty Co.* 19 Dick. 231.

Accordingly we are of opinion that the master's finding in favor of the plaintiff for the two sums of $8,629.48 and $4,652.92, being the value of the goods in warehouse and the amounts collected by the defendant on the choses in action, respectively transferred and assigned to him as already stated, must be sustained; and for the same reasons the like finding for $1,771.87 for preferential payments of money made by the company to the defendant after November 16, 1903, must be sustained. We have not further considered whether the defendant can be held for such preferential payments during the interval between November 16, 1903,* and December 12 of the same year, because the master in dealing with the notes indorsed by the defendant and paid by the company has expressly found in the fifteenth paragraph of his report † that on the earlier as well as on the later of these dates the company was insolvent both technically and within the meaning of the bankruptcy act. It may be added that one of the results of the continued dealings of the defendant with the company is, as the master has found in the eleventh para-

---

* On this matter, the master found that the defendant " was doing business under the name of H. P. Emerson & Company and had continuous dealings with the company from its organization until early in March, 1904. After November 16, 1903, he collected from the company on account of his dealings $1,771.87 more than he gave it credit during the same time; and from December 16 to March 16 he collected $2,602.41 in excess of credits given to the company for the same time."

† The finding in the fifteenth paragraph of the report to which reference is here made was as follows : " The company paid the following notes which had been endorsed by Mr. Emerson, viz : —

graph of his report,* that the defendant would be liable on this item for a greater amount than has been charged against him, if his liability were to be determined on December 12 rather than on the earlier date.

The company also paid at different dates on and after November 16, 1903, divers promissory notes of its own· to the total amount of $51,000.   Each of these notes had been indorsed by the defendant; and the circumstances, as found by the master, are such that, if the payments had been made directly to him, the plaintiff would have been entitled to recover the total amount thereof from him.   But the payments were made directly to the holders of the notes, although he, as the indorser, was the person benefited by the payments, and it was the intention of the company to give him a preference by the payments, and he had reasonable cause to believe that the company was insolvent and intended to give him a preference.   The payments were made by the defendant as treasurer of the company in its behalf, at the respective dates of maturity of the several notes, and of course before the inchoate liability of the defendant as indorser had become fixed by their non-payment and due notice to him.   **R. L.**

| Nov. 16, 1903 | Colonial National Bank note for | $2,500.00 |
|---|---|---|
| Dec. 10, " | Mt. Vernon Nat'l Bank " " | 5,000.00 |
| " 15, " | " " " " " | 5,000.00 |
| " 21, " | Colonial National Bank " " | 2,500.00 |
| " 28, " | " " " " " | 5,000.00 |
| " 29, " | " " " " " | 1,000.00 |
| Jan. 1, 1904 | " " " " " | 5,000.00 |
| " 5, " | " " " " " | 5,000.00 |
| " 11, " | " " " " " | 5,000.00 |
| " 15, " | " " " " " | 5,000.00 |
| " 21, " | " " " " " | 5,000.00 |
| Feb. 1, " | " " " " " | 2,500.00 |
| " 5, " | " " " " " | 2,500.00 |
| | Total | $51,000.00 |

" All of these payments were made by Mr. Emerson as treasurer in the company's behalf.   The company at the time of each payment was technically insolvent and insolvent within the meaning of the bankruptcy act.   Mr. Emerson was the person benefited by the payment of these notes.   The company intended by each one of these payments to give Mr. Emerson a preference, and he had reasonable cause to believe that the company was insolvent and intended to give him a preference."

* This paragraph is quoted in the first footnote on the preceding page.

c. 73, §§ 83, 106.    There is no contention made that the holders
of the notes had any reasonable cause to believe that a preference
was intended to be given by their payment; and the trustee in
bankruptcy, the present plaintiff, has no cause of action against
them.

The national bankruptcy act provides in § 60, b, already re-
ferred to, that " if a bankrupt shall have given a preference . . .
and the person receiving it, or to be benefited thereby, or his
agent acting therein, shall have had " the reasonable cause of
belief already mentioned, " it shall be voidable by the trustee,
and he may recover the property or its value from such person."
The defendant contends that the cause of action given by this
section is only against the person who actually has received the
preference, by receiving himself the money or property trans-
ferred, and that the words " or to be benefited thereby " were
inserted in the statute only to meet the contingency of money
or other property having been transferred to one who was not a
creditor, but where a creditor was to receive the benefit thereof.
He relies also on the provisions of § 57, i, of the bankruptcy
act, that " whenever a creditor whose claim against a bankrupt
is secured by the individual undertaking of any person fails to
prove such claim, such person may do so in the creditor's name,
and if he discharge such undertaking in whole or in part he
shall be subrogated to that extent to the rights of the creditor."
He argues that, as a guarantor or indorser merely as such has
no standing to make proof in his own name, but can prove only
in the name of the creditor and can claim only upon his own
payment to be subrogated to the rights of the original creditor,
he is himself, especially where his liability has not yet become
fixed, a mere stranger to the bankrupt estate, not having himself
any of the rights of a creditor, and accordingly being incapable
of receiving a preference or the benefit of a preference, and
so not being liable to refund to the trustee in bankruptcy the
amount of a payment made by the bankrupt to the creditor
which cannot be recovered from the creditor himself, even
though the payment was made for the purpose of relieving the
indorser from a subordinate liability to the creditor which had
not yet become fixed, and though it was intended to operate, as it
has operated, for the relief of the indorser, and thus really to give

him the benefit of a preference contrary to the provisions of the bankruptcy act.

In our opinion this is too narrow a construction of the statute. Its manifest purpose was to give a right of action against either the person who received the preference or the person who derived the benefit therefrom. In this case, the payments were really made by the defendant himself, though acting in his official capacity for the company; they were intended to operate for his benefit and to secure to him a preference by relieving him from the burden of the agreement which by his indorsement he had made to pay the notes if the company failed to pay them and certain further steps were taken by the holders. This object has been accomplished; he has secured relief from his agreement of indorsement, and has enjoyed the benefit of the preference intended. His case is within both the intent and the express words of the statute. This point was directly decided in *Kobusch* v. *Hand*, 156 Fed. Rep. 660. To the same effect are *Landry* v. *Andrews*, 22 R. I. 597, and *James Clark Co.* v. *Colton*, 91 Md. 195. Similar decisions were made under the bankrupt act of 1867. *Bartholow* v. *Bean*, 18 Wall. 635. *Ahl* v. *Thorner*, 3 N. B. R. 118. The decision made by the New York Court of Appeals since this case was argued, that under such circumstances the payment cannot be recovered back from the creditor to whom it was made, tends in the same direction. *Perry* v. *Van Norden Trust Co.* 192 N. Y. 189. We do not need here to consider the much controverted question, as to which there is at present in other courts an irreconcilable conflict of authority, whether the directors or other managing officers of an insolvent corporation have the right to prefer themselves to other general creditors, or whether they have become subject to such fiduciary obligations to the creditors, in addition to their original obligations as trustees for the stockholders, as to make it their duty to see that all the corporate assets are applied fairly to the payment of all corporate debts without availing themselves of their controlling power and superior means of knowledge to gain any advantage to themselves as creditors over other creditors of the corporation. We have here preferences which come within the prohibition of the bankruptcy act, and we confine ourselves to the case which is presented. Upon the findings of the master,

the defendant is chargeable with the sum of $51,000, the amount of the notes in question.

The master refused to charge the defendant with the sum of $7,746.23, paid by the company, after November 30, 1903, to Ropke and Otto, upon an open account for which the defendant was liable as a guarantor. The circumstances were in other respects like those already stated with reference to the promissory notes indorsed by the defendant. The master's refusal was based solely upon his ruling that the allegations of the bill were not broad enough to cover this claim; and the correctness of this ruling is brought before us upon the plaintiff's exception.

The ruling was too strict. The sixty-ninth paragraph of the bill directly avers that the defendant "was an indorser upon the notes of the company and was otherwise obligated for its debts to a very large amount, being upwards of forty thousand dollars, and that, while said corporation was insolvent, and while this respondent knew or had reasonable cause to know such condition of insolvency, he, while the treasurer and managing director as aforesaid, and in fraud of the rights of, and violation of his duty to, the creditors of said corporation, and with the intent to prefer himself as a contingent creditor of said corporation, and in fraud of the bankruptcy act, did willfully neglect and refuse to pay all other creditors of said corporation than those on whose claims he was contingently liable as surety; did delay them in the collection of their claims and in suits thereon and in filing a petition in bankruptcy against said corporation until he had secured the payment of said notes and obligations from the funds of said corporation; all of which was done within four months previous to the filing of the petition in bankruptcy against said corporation: that said payments constituted fraudulent preferences within the meaning of the bankruptcy act, and should be repaid by this respondent to this complainant." And the eleventh prayer of the bill is "that the payments by this respondent set forth in paragraph sixty-ninth of the bill be declared fraudulent and void as preferences under the bankruptcy act of the United States, and this respondent be ordered to account for all sums so paid out of the treasury of said corporation." If it had been intended to insist upon the point that there was no direct aver-

ment of the actual payment of these notes and other obligations, that claim should have been specially made by demurrer. If the objection had been made that the total recovery now sought under these averments was much in excess of the sum named, " upwards of forty thousand dollars," that objection might have been obviated by a merely formal amendment, and must now be taken to have been waived. In our opinion, the plaintiff's seventh exception to the master's report must be sustained, and the defendant must be charged with the further amount of this payment.

The master was warranted in charging the defendant with the profits made by him on the purchase of the accounts of the Daisy Manufacturing Company and Schlessinger and Company. He well might find that the defendant was acting for the company in these transactions, and so that he could hold the company only for the amounts actually paid by him. *Bulkley* v. *Whitcomb*, 121 N. Y. 107. *Higgins* v. *Lansingh*, 154 Ill. 301. *In re Imperial Land Co.* 4 Ch. D. 566. But for the same reason he cannot be charged with the full amount of these claims on the ground that their payment was an unlawful preference to him. If, however, we accepted the defendant's contention that he purchased these claims acting wholly in his own behalf, and not in any way for the benefit of the company, as he might have done, (*Glenwood Manuf. Co.* v. *Syme*, 109 Wis. 355; *Bradly* v. *Marine Phosphate Co.* 3 Hughes, 26,) we should be unable to avoid the conclusion that the subsequent payment of these claims to him by the company was an unlawful preference to him, and that he was chargeable with the full amount thereof.

The master has charged the defendant with a sum of more than $9,000 for the amount of salary received by him in excess of a fair compensation for services rendered. Upon his findings, we are of opinion that this was correct. *Union Pacific Railroad* v. *Credit Mobilier*, 135 Mass. 367, 376. *Kelley* v. *Newburyport & Amesbury Horse Railroad*, 141 Mass. 496, 499. *Nye* v. *Storer*, 168 Mass. 53, 55. *Fillebrown* v. *Hayward*, 190 Mass. 472, 478. *Raynolds* v. *Diamond Mills Paper Co.* 3 Robbins, 299. *Davis* v. *Thomas & Davis Co.* 18 Dick. 572. *Gardner* v. *Butler*, 3 Stew. 702. *Wayne Pike Co.* v. *Hammons*, 129 Ind. 368. It

does not appear that there has been such a ratification of the action by which his salary was fixed as would be binding upon this plaintiff. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 518. We do not find it necessary to determine how far if at all the defendant's rights in this respect were limited by the law of New Jersey in consequence of the fact that the company was incorporated under the laws of that State. Nothing has been shown to increase his rights. We cannot say, however, that the master's finding, that the salaries as voted by the directors did not include dividends, was either wrong as matter of law or unwarranted by the evidence, though it well may be that we should have felt equally bound if a contrary finding had been made. And the ruling that what was done did not upon the findings made amount as matter of law to a declaration of dividends, was correct.

There is no occasion to discuss in detail the exceptions of either party not covered by what has been said, although they have all been carefully examined and considered. So far as they are material to the conclusions which we have reached, they ought not to be sustained.

The plaintiff's seventh exception to the master's report should be sustained; all the other exceptions of each party should be overruled; and a decree should be entered for the plaintiff for the sums found by the master and the further sum of $7,746.23, with interest upon the whole amount from the date of the filing of the bill.

*So ordered.*