JAMES GLEASON, Plaintiff, *v.* SETH J. T. BUSH, as Trustee in Bankruptcy, Defendant.

(Supreme Court, Monroe Trial Term, July, 1917.)

Replevin — pleading — evidence — bankruptcy — corporations — judgments.

Within four months of the bankruptcy of a corporation of which plaintiff was the vice-president and a director, he purchased merchandise of it, and the agreed price, $465.30, was credited on an indebtedness of $2,000 due to him from the corporation. Upon presentation of the usual order received by plaintiff from the business manager of the corporation delivery of the merchandise was refused. In an action in replevin the answer, beside putting in issue the allegations of the complaint, pleaded as a counterclaim that the sale was void as a prefer-

ential payment made within the four months' period. The evidence established that the transaction was an ordinary purchase and sale in due course without improper intent either upon the part of plaintiff or the business manager of the corporation and without contemplation on the part of either of the financial condition of the corporation which at the time of the purchase was in failing circumstances. It was further established that plaintiff had no knowledge of the precarious condition of the corporation, nor of any facts which should have put him upon inquiry, or have given him reasonable cause to believe that it was either in failing circumstances or actually insolvent. *Held,* that plaintiff was entitled to judgment awarding him possession of the merchandise and dismissing the counterclaim, with costs; that in the circumstances the presumption that plaintiff had knowledge of the financial condition of the corporation was rebutted.

ACTION in replevin.

L'Hommedieu & Whedon, for plaintiff.

Bentley & MacFarlane, for defendant.

SAWYER, J. Upon December 13, 1912, plaintiff purchased from Growers and Shippers' Exchange, a corporation now insolvent, a quantity of apples in cold storage, and received from its business manager the usual order upon the storage warehouse therefor. Mr. Gleason, who was at the time the vice president and a director of the corporation, had prior thereto dealt through it in the sale of fruits, with a result that it had become indebted to him in an amount in excess of $2,000. Upon the purchase of these apples and the delivery to him of the warehouse order, he was given credit upon this account for their agreed price, namely, $465.30. The order was sometime later presented by him to the operators of the warehouse who refused delivery, whereupon this action was brought against them in replevin.

39

The Growers and Shippers' Exchange, by an order of interpleader, was made defendant in their stead and upon its bankruptcy in the following March this defendant, as its trustee in bankruptcy, was substituted for it.

The answer puts in issue the allegations of the complaint and then, by way of counterclaim, alleges that the sale is void as being a preferential payment within four months of the bankruptcy.

The evidence convinces me that, while the corporation was upon December 13, 1912, in failing circumstances, if not actually insolvent, and that the credit gave plaintiff a larger percentage of his indebtedness than other creditors have received, the transaction in question was an ordinary purchase and sale in due course of business without improper intent upon the part of plaintiff or the manager of such corporation, and without contemplation upon the part of either of them of the financial situation of the Growers and Shippers' Exchange. I have become by such evidence equally convinced that plaintiff had no knowledge of the precarious financial condition of the corporation, nor of any facts which should have put him upon his guard, or given him reasonable cause to know that it was either in failing circumstances or actually insolvent.

The only question remaining is one of law, namely, whether an officer and director of a corporation, who by the opportunities of his office might have discovered its financial condition, is, under circumstances such as are here presented, chargeable with that knowledge.

Defendant relies in support of this proposition upon the well understood rule that in controversies between corporations and their officers, especially those founded in fraud actual or implied, or upon violations

of statutes, such knowledge is imputed as it also is in controversies between corporations and third parties. While in the interest of justice such knowledge is in those cases imputed to officers by way of estoppel, the general rule of law is that laid down in *Rudd* v. *Robinson,* 126 N. Y. 113, summarized in the headlines, as follows: " The mere fact that a person is a director or stockholder of a corporation does not make him chargeable with actual knowledge of its business transactions or of entries made in its books."

None of the cases relied upon by defendant nor the many others examined in the course of this investigation seem to modify or change this general proposition. Each of them is disposed of upon its own facts, and in every instance involves considerations not here presented.

In this action, as in the *Rudd Case, supra,* the decision must turn upon the sole and only fact, that plaintiff was an officer of the corporation.

In *Queen* v. *Weaver,* 38 App. Div. 628; 166 N. Y. 398, the defendant had actual knowledge of the non-payment of his corporation's obligations, and with the intent to secure himself for past indebtedness, together with certain other obligations then assumed, took over by assignment practically the entire corporate assets, the business theretofore conducted being forthwith ended.

*Wesp* v. *Muckle,* 136 App. Div. 241, was an action under the statute to recover dividends declared at a time when the corporation was insolvent and decision turned upon the effect of the statute.

*Martin* v. *Webb,* 110 U. S. 7, involved the cashier of a banking corporation and the question as to how far its officers and directors, in dealing with outsiders, were chargeable with knowledge.

*First National Bank* v. *Tisdale,* 84 N. Y. 655, involved

substantially the same question of evidence as did *Rudd* v. *Robinson, supra,* and the evidence was there held competent because of the fact that Tisdale had had access to and *had examined* the books of the banking corporation.

*Clark* v. *Colton,* 91 Md. 195, likewise turns upon its own facts, the officers and directors of an insurance corporation having paid to themselves claims held against it at a time when the circumstances conclusively charged them with knowledge of its insolvent condition.

*Atherton* v. *Emerson,* 199 Mass. 199, relied upon with much confidence by counsel, so far as this question is concerned, goes no further than to say concerning the official involved: "There was at least a *presumption* of fact that he knew of its actual financial condition," and then goes on, "The cases which hold that a director is not chargeable as a matter of law with the exact knowledge of the business transactions of the corportion * * * or the contents of its books and papers, are beside the point, and need not be considered."

Without enlarging upon this subject, it is sufficient to say that, should the holding of the *Atherton* case be deemed the law of this state, defendant has the affirmative and that presumption cannot prevail as against the facts which conclusively demonstrate that Mr. Gleason had no knowledge either of the Growers and Shippers' Exchange's financial circumstances or of facts which would reasonably charge him with such knowledge; in other words, the presumption is here thoroughly and completely rebutted.

Plaintiff is entitled to judgment awarding him possession of the apples and dismissing defendant's counterclaim, with costs.

Judgment accordingly.