MARY BRADY *vs.* MICHAEL J. FINN.

Hampshire. September 26, 1894. — October 19, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Deceit — Declaration — False Representations — Law and Fact — Evidence — Discretion of Court.*

The declaration in an action for deceit alleged, in substance, that the plaintiff was induced to exchange her property, consisting of a parcel of land with a dwelling-house thereon, for the defendant's farm and the personal property thereon, by the latter's representations as to the advantageous situation and fertility of the farm and the value of the buildings, cattle, implements, and products thereon, all of which were enumerated; that these representations were false, "all of which the defendant well knew"; that the plaintiff had known and dealt with the defendant for many years, and placed great confidence in him as a reliable business man; that the plaintiff told the defendant that she did not know where his farm was located, and he promised to take her there, but, upon being asked so to do on three different occasions, he offered certain excuses for his inability to perform his promise, and finally told her that, after the deeds were given, he would show her the farm; "that. by such evasions and delays, and by telling her that she could trust him, and in the mean time must not speak to any one about the proposed purchase, because there were one or two persons who would insist on buying the farm if they knew it was for sale, the defendant fraudulently induced her to forbear examining the farm and personal property and making inquiries about them, as she otherwise would have done; and that, in pursuance of the same fraudulent intent to deceive and injure her, the defendant so pressed her to complete the exchange of property that the whole business was completed on the second day after it was suggested to her by the defendant, so that she had no time to examine or inquire about said property." *Held,* that the declaration, not having been demurred to, was sufficient to support a verdict for the plaintiff.

---

* The question was as follows : "Was there an imperfect construction of the sidewalk?"

In an action for deceit in the sale of a farm, the evidence tended to show that the farm, though in the same town where both parties lived, was in a remote part thereof, with which the plaintiff was unacquainted; that she proposed on three occasions to the defendant to take her there, and he promised so to do on some subsequent day, and put her off on various pretenses; that he hurried the matter to completion within forty-eight hours, and thus deprived the plaintiff of time for inquiry and examination; and that the plaintiff was justified by the defendant's position in life and her long acquaintance with him in reposing confidence in his statements. *Held*, that the court could not say, as matter of law, that the plaintiff was so careless in trusting the defendant, and in not examining the farm before taking a deed thereof, that she should be precluded from recovery; and that the question of her negligence was properly submitted to the jury.

An exception to the admission of evidence, which it was within the discretion of the judge to admit when offered, although it might have been excluded until further testimony had been put in, cannot be sustained, if, no such testimony having been introduced, the excepting party, at the close of the evidence, did not request that the evidence objected to be stricken out, and the jury instructed to disregard it.

TORT, for deceit. The amended declaration alleged that the defendant induced the plaintiff to exchange a parcel of land, with a dwelling-house thereon, situate in Holyoke, which she owned, and which was fairly worth $2,500 over and above all encumbrances, for a farm of his situate in Holyoke, together with ten cows, a pair of horses, five hundred bushels of potatoes, four hundred bushels of corn, and all the tools, vehicles, and other articles of personal property then on the farm and necessary for carrying on the farm, and, in further payment for the farm and personal property, induced her to give him a mortgage of the farm to secure the payment of $2,500, with interest; that to induce her to make such purchase and conveyance, and to execute and deliver such mortgage, the defendant falsely represented to her that the farm and personal property were together worth $5,000, that the land of the farm was rolling, and every portion of it could be ploughed except the woodland, that there was a good pasture, in which he had kept fifteen cows through the preceding summer, that there were twelve hundred cords of wood standing on the farm, worth $2,000, that there was a good road, and not very hilly, over which a good load could be drawn, between the farm and Holyoke, that there were a good habitable house, a new barn, and good outbuildings on the farm, that the farm was situated on a road where there was much passing, that there were ten first-class picked cows

to go with the farm, each worth fifty dollars, that there was a pair of sound horses on the farm, worth $500, that the vehicles, farming tools, and other implements which were to go with the farm were new and little used, and that there were five hundred bushels of potatoes and four hundred bushels of corn on the farm and to be sold with it; that these representations were false, " all of which the defendant well knew "; that for many years the plaintiff had known the defendant as a prosperous business man of Holyoke; that she had dealt with him weekly all that time, and had come to regard him as a reliable business man, in whom she placed great confidence; that he sent for her and proposed to sell her the farm, representing that he wished to do her and her husband a favor by giving them a great bargain; that she asked him where the farm was, and he said it was in West Holyoke; that she told him she did not know where West Holyoke was; that he said he would take her there any day; that she said she would go right away, and he said he could not take her then because his horses were all busy; that at a subsequent interview she asked him to take her to the farm, and he made a similar reply; that at their final interview she asked again to be taken to see the farm, and he said, " Wait until after the deeds are given, and I will show you the farm "; that by such evasions and delays, and by telling her that she could trust him, and in the mean time must not speak to any one about the proposed purchase, because there were one or two persons who would insist on buying the farm if they knew it was for sale, the defendant fraudulently induced her to forbear examining the farm and personal property and making inquiries about them, as she otherwise would have done; and that, in pursuance of the same fraudulent intent to deceive and injure her, the defendant so pressed her to complete the exchange of property that the whole business was completed on the second day after it was suggested to her by the defendant, so that she had no time to examine or inquire about the property. Answer, a general denial.

Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show, among other things, that in February, 1892, she was the owner of a house

and lot of land in Holyoke, fairly worth $2,800 and subject to a mortgage for $300 ; that she and her husband, John Brady, had lived in Holyoke for more than twenty years ; that for some thirteen years she had known the defendant and dealt with him at his grocery store ; that the defendant was a man of wealth, and had always treated her in a manner to win her confidence ; that in February, 1892, she was informed that the defendant had a farm which he wished to sell and would like to see her about it ; that on February 22, 1892, she went accordingly to see the defendant at his store ; that the defendant said, " I have a good farm for you, and as good as any one you will find in the State, for a small price and well stocked " ; that the defendant said this farm was in West Holyoke ; that she said that she did not know where West Holyoke was, and the defendant said, " You won't leave Holyoke " ; that she said, " I would like to see the farm now " ; that the defendant said, " I and the horses are too busy now, but I will take you out some day, — come to-morrow morning with your husband, and we will close the trade, — be sure and do not tell anybody, for another party wants it " ; that early the next morning she and her husband went to the defendant's store, and Brady asked him where the farm was, and the defendant answered in West Holyoke; that Brady then asked where the place called West Holyoke was; that the defendant said it was in Holyoke, about four and a half miles away, and that he would take him out some day ; that Brady said, " I want to see it right off," and the defendant answered, " My horses are too busy to go to-day " ; and that Brady thereupon said, " Are you trying to cheat me ? " and the defendant replied, " No, you can trust me." The plaintiff further offered evidence tending to show that the defendant then stated that there was a pretty fair house on the farm, of six or seven rooms, and with a lawn around it, that there was a first-class barn, with new wings to it, that everything in the line of vehicles and farming tools and implements needed on the farm went with it, all new or nearly so, that there were four hundred bushels of potatoes and four hundred bushels of corn, and all the hay the plaintiff would need, to be sold with the farm, that included in the sale were ten picked cows worth fifty dollars apiece, and a pair of first-class horses worth five hundred dollars, that there was a pasture which could carry fifteen cows through

the season and would keep ten nicely, that the land of the farm was rolling, and every acre except the woodland could be ploughed, that there were twelve hundred cords of wood standing on the farm and worth $2,000, that the location was not a lonesome one, but beside a much-travelled road, that the road to Holyoke, where the principal market would be, was a good one, not very hilly, but one over which an ordinary horse could draw a good load, and that the farm, with the personal property upon it, was worth more than $5,000, but the plaintiff should have it for that price; that it was agreed that the plaintiff's house and lot, subject to the mortgage, should be taken by the defendant at $2,500, in part payment for the farm, and that the plaintiff should mortgage the farm to the defendant for $2,500 and interest; that the defendant told the plaintiff to come with her husband the next morning and have the papers made out; that the plaintiff asked why the defendant wanted to hurry the business through so, and he said, " There are other parties after it, and if you take it it must be finished at once, for if I sell to them I can get a bigger price, but I want to give you the benefit, and you can trust me "; that the defendant told them not to tell any one that they were going to buy the farm; that on the next morning the plaintiff and her husband went to the defendant's store, and the plaintiff said, " I want to see the farm before I buy it"; that the defendant said one of his horses was sick and she must wait until his business was more quiet, when he would take them over and they would find everything just as he had said; that thereupon they went with him to a lawyer's office, where the deeds and mortgage as were agreed were drawn, executed, and delivered; that thereafter, as they were going down stairs from the lawyer's office, the defendant said, " Now you can tell any one you please about the farm "; that up to this time they had not made any inquiries about nor any attempt to examine the farm, owing to the defendant's cautions against doing so and their entire confidence in him and his statements; that, after the deeds had been delivered, the plaintiff several times asked the defendant to show her the farm, but it was not until some two weeks after that he did so; that when she saw the place she exclaimed, " Mr. Finn, give me back my little home!" and he said, " A bargain is a bargain "; that the house and the barn were in a dilapidated condition; that the vehicles and farming implements and tools were

old and of small value; that the cows were not worth fifty dollars apiece, and were not a picked lot, but poor "milkers" and of small value; that the pair of horses was not first-class nor worth five hundred dollars, but one horse was foundered and not worth sixty dollars, and the other was subject to colic and worth about eighty dollars; that there were not over two hundred bushels of potatoes and only from one hundred to two hundred bushels of corn; that a large part of the farm was on the side of a mountain, and not over twelve or fifteen of its one hundred acres could be ploughed; that the pasture was hilly and barren, and could not carry the ten cows for half of the season; that there were not over two hundred and fifty cords of wood standing on the farm, and that was in places so difficult of access as to be practically worthless; that the location of the house was lonesome, and the road beside which it stood was little travelled; that the road to Holyoke was in large part over a mountain, the first stretch of three quarters of a mile above the farm being so steep that no horse could draw an ordinary load up it, and teamsters were accustomed to throw off parts of ordinary loads and make two trips to carry a load up; that this steep road diminished the value of the farm; that the farm and buildings were not fairly worth $2,000; and that the personal property altogether was not worth $500.

The defendant introduced evidence tending to show that the plaintiff came to his store to purchase a farm; that he told her he had a good farm in West Holyoke, about four and a half miles from Holyoke, a good pair of farm horses, ten good cows, a pretty fair house, good barns, plenty of wood, and hay and grain on it, plenty of farming tools and implements, altogether worth $5,000; that he asked the plaintiff if she would not like to see the farm, and she said it was not necessary; that another time she said "they knew all about it" (the farm); and that the trade was not consummated on the third day from the first talk, but after a long lapse of time.

The sale between the parties was made on or about February 24, 1892. The plaintiff offered a deed of the premises, setting out a foreclosure sale thereof on May 20, 1893, and showing what the premises then brought, as evidence of the value of the farm in February, 1892. To the admission of this evidence the defendant objected, because no evidence had been introduced

showing the relative condition or value of the farm land and buildings in February, 1892, and May, 1893. The judge admitted it; and the defendant excepted.

At the close of the evidence, the defendant asked the judge to rule that, upon the evidence and the pleadings, the plaintiff could not recover. The judge refused so to rule; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. L. Green,* for the defendant.

*R. O. Dwight,* for the plaintiff.

LATHROP, J. The amended declaration in this case is inartificially drawn, but it was not demurred to, and we are of opinion that it sets forth a cause of action with sufficient precision to support a verdict. Fraud is undoubtedly the gist of the action, and in some form must be alleged and proved. The declaration sets forth certain facts to have been stated by the defendant, and their falsity, and also alleges the defendant's knowledge of their falsity. See *Litchfield* v. *Hutchinson,* 117 Mass. 195; *Holst* v. *Stewart,* 154 Mass. 445. The representations made were of material facts which were susceptible of knowledge; and the fraudulent intent of the defendant was an inference which the jury was entitled to draw. *Collins* v. *Denison,* 12 Met. 549.

The question of most difficulty in the case arises from the fact that the misrepresentations were concerning facts, the truth or falsity of which could have been ascertained by the plaintiff had she gone to the farm before taking a deed thereof. The general rule undoubtedly is " that one bargaining with another must use reasonable diligence to discover for himself facts obvious to an ordinary observer, of which the means of knowledge are equally available to both parties "; and that, if he fails to do this, he cannot maintain an action of deceit for the misrepresentation of them. *Holst* v. *Stewart,* 161 Mass. 516, per Knowlton, J. In the same case, however, it was said: " But in the application of this rule the circumstances of each case should be considered to determine whether the plaintiff has been guilty of such inexcusable negligence as should preclude him, under a general rule of public policy, from having a remedy against one who has fraudulently abused his confidence." And

in that case it was held, on the circumstances, that the court could not say, as matter of law, that the plaintiff was so careless in trusting the person making the representation that he should be precluded from recovering.

In the case at bar the jury would have been warranted in finding that the farm which the plaintiff was induced to buy, though in the same town where she and the defendant lived, was in a remote part thereof, with which she was unacquainted; that she proposed on three occasions to the defendant to take her there, and he promised to take her on some subsequent day, but put her off on various pretences; that he hurried the matter to completion within forty-eight hours, and thus deprived the plaintiff of time for inquiry and examination; and that she was justified by the defendant's position in life and her long acquaintance with him in reposing confidence in his statements. The facts are certainly as strong in this case as in *Holst* v. *Stewart* for departing from the general rule, and in submitting the question of the plaintiff's negligence to the jury.

The remaining question is as to the admissibility of the evidence of the sale of the property, fifteen months after the conveyance to the plaintiff, under a foreclosure of a mortgage. The fact that the sale was made so long after the purchase by the plaintiff does not render the evidence incompetent. *Roberts* v. *Boston*, 149 Mass. 346, 354. The value of the testimony depended largely, if not entirely, upon the relative condition of the farm and buildings at the time of the purchase by the plaintiff and at the time of the sale, and such evidence is usually introduced. *Brigham* v. *Evans*, 113 Mass. 538. *Croak* v. *Owens*, 121 Mass. 28. The only exception of the defendant to the admission of the evidence is, that no testimony had been introduced showing the relative condition or value at the different times. While the presiding justice might have excluded the evidence until further testimony had been put in, we are of opinion that it was within his discretion to admit the evidence of the sale at the time it was admitted; and at the close of the evidence, if no testimony had been put in bearing upon the relative condition or value, the defendant might then have requested that the evidence of the sale be stricken out, and the jury instructed to disregard it. This the defendant did not do; and the order must be,　　　　　　　　　　　　　　*Exceptions overruled.*