MILDRED L. ROLLINS vs. WALTER H. QUIMBY.

Worcester.   September 29, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Deceit. Fraud. Estoppel. Sale, Caveat emptor.*

A statement by the seller of a mortgage that it is a first mortgage, made to induce
   its purchase when he knows it to be a second or a third mortgage, is a repre-
   sentation of a material fact and not mere seller's talk.

If a married woman and her husband acting as her agent, both of whom are inex-
   perienced in business, are induced to exchange a farm and live stock, belonging
   to the woman, for three mortgages by false and fraudulent representations of
   the owner of the mortgages that they are "first mortgages just as good as
   money in the bank," when in fact one of the mortgages is a second mortgage
   and another of them is a third mortgage, and, in making the exchange relying
   on this representation of the seller of the mortgages, they are led by their con-
   fidence in him to refrain from making an examination of the papers and by
   his assurance that it is unnecessary to employ a lawyer are led to refrain from
   doing so, the woman is not precluded, by the fact that she and her husband did
   not examine the records in the registry of deeds nor by the fact that they did
   not read the provisions of the mortgages, from recovering any damages which
   she may have sustained in consequence of the fraud.

TORT for the conversion of property of the plaintiff alleged to
have been obtained from her by false and fraudulent representa-
tions made by the defendant.   Writ dated April 6, 1907.

The defendant filed a motion for specifications, in answer to
which the plaintiff filed an amendment, which in substance was
a declaration for deceit, alleging that the defendant, in order to
induce the plaintiff to exchange a certain farm situated in the
town of Dudley and the live stock thereon for certain mortgages,
falsely and fraudulently represented to the plaintiff that the
mortgages were first mortgages, and that the mortgagor had paid
interest regularly on the notes secured by them, whereas in fact
the defendant knew that they were not first mortgages and that
the interest had not been paid on the notes; that the plaintiff
relying on these statements and believing them to be true thereby
was induced to exchange the farm and the live stock for the
mortgages and the mortgage notes to her great damage, and that
as soon as she became cognizant of the fraud practised upon her
she immediately rescinded the exchange and offered to the de-
fendant the assignment of the mortgages and the notes.

In the Superior Court the case was tried before *Gaskill*, J., who ordered a verdict for the defendant; and the plaintiff alleged exceptions. It was agreed at the time of the trial that the jury should decide whether the property had been obtained by the alleged false and fraudulent representations, and that, if the answer was in the affirmative, the case was to be sent to an assessor for assessment of the damages, whose decision as to the damages should be final.

The case was submitted on briefs.

*J. A. Thayer, C. B. Perry & A. R. Greeley*, for the plaintiff.

*M. M. Taylor*, for the defendant.

MORTON, J.  The evidence warranted a finding that the plaintiff was induced to sell the farm and live stock by representations made by the defendant, that the mortgages which he proposed to trade for the farm and stock " were first mortgages just as good as money in the bank," and that these representations were in part at least false and fraudulent.  One of the mortgages was a first mortgage for $500 on real estate in Stoneham; one was a second mortgage for $2,200 on real estate in Worcester; and the other was a third mortgage for $2,300, also on real estate in Worcester.  The defense is that the damages, if any, which the plaintiff has sustained, were the result of her own negligence and that of her husband who acted as her agent. There was no testimony as to the value of the properties subject to these mortgages and the adequacy or inadequacy of the mortgages as security for the amounts named, and the plaintiff's case must stand or fall, therefore, on the representation that they were first mortgages.

The law does not attempt to save parties from the consequences of their own improvidence and negligence; but it looks with even less favor upon misrepresentation and fraud.  And, accordingly, in later decisions, this court has manifested a disinclination to extend the immunity of vendors for statements or representations made by them beyond the limits already established.  *Boles* v. *Merrill*, 173 Mass. 491.  *Kilgore* v. *Bruce*, 166 Mass. 136.  *Way* v. *Ryther*, 165 Mass. 226.  *Whiting* v. *Price*, 172 Mass. 240.  *Arnold* v. *Teel*, 182 Mass. 1, 4.  *Long* v. *Athol*, 196 Mass. 497, 505.

There can be no doubt that the representation that the mort-

gages were first mortgages was a material representation of fact and not seller's talk, and the plaintiff's husband testified in effect that he relied upon it, and would not have considered the matter if he had known that the mortgages were second mortgages.   The defendant contends that it could have been readily ascertained by the plaintiff and her husband, from an examination of the documents themselves and from the records, that two of the mortgages were not first mortgages, and that, if she and her husband took them as such, and have suffered damages thereby, it was due to their own carelessness and he is not liable for such damages.

So far as appears, the plaintiff had no knowledge concerning business matters of the nature of those involved in the transaction, and there was testimony tending to show that her husband was also inexperienced.*   If they were inexperienced, the degree of care required of them would be, or might be found to be, different from that required of them if they possessed the requisite knowledge and skill to put them on an equal footing with the defendant.   " False statements," for instance, " as to market value may not be actionable if made to an experienced dealer. . . . But it is otherwise if they are made to an unskilled person." *Kilgore* v. *Bruce*, 166 Mass. 136, 138.   See also *Barndt* v. *Frederick*, 78 Wis. 1, 11; *Kendall* v. *Wilson*, 41 Vt. 567, 571.   If the plaintiff's husband had little or no experience in looking up titles and did not know that the records could or should be examined to ascertain whether the mortgages were in fact first mortgages or not, we do not see how it could be ruled as matter of law that he was negligent in not examining the records himself, or in not having them examined by some one else.

Further, the plaintiff's husband testified that he spoke of going to a lawyer to have the deed made, and that the defendant said that it was not necessary, that it could be done in Worcester, and the defendant did not go to a lawyer.   The jury could have found that this and the representation that the mortgages were first mortgages were calculated and were intended to divert and did divert the attention of the plaintiff and her husband from

---

* The plaintiff's husband testified that he had been a blacksmith for twenty years, and that, except for three years when he managed his wife's farm in Dudley, he always had been a blacksmith.

sources of information to which they would or might have resorted but for the confidence which they were induced to place in the defendant. If that was so, then even though they might, as said in substance in *Grimes* v. *Kimball*, 3 Allen, 518, 522, 523, by searching the records in the registry of deeds, have obtained information in relation to the mortgages, they were not bound to do so, and the plaintiff is not precluded, by the fact that she and her husband did not examine the records, from recovering of the defendant the damages, if any, which she has sustained in consequence of his fraud.

Similar considerations apply to the objection that an examination of the mortgages themselves would have shown that they were not first mortgages. The defendant at no time told the plaintiff what particular mortgages he proposed to transfer. And he did nothing at the registry of deeds in Worcester, where the transaction was completed, to put the plaintiff and her husband on their guard. In delivering the notes and mortgages he put each note and mortgage into an envelope by itself and put these three envelopes into a larger one which he handed to the plaintiff's husband, and gave the assignments to the register to be recorded, with directions to mail them to the plaintiff's husband at his home in Webster. It was not until three weeks after, when the plaintiff had occasion to consult a lawyer in regard to raising some money on the mortgages, that the fraud was discovered. Very likely if the plaintiff and her husband had examined the mortgages at the registry of deeds they would have discovered the fraud, though their alleged inexperience is not to be forgotten. But they could have discovered it only by an examination of the body of the mortgage deeds themselves. There was nothing, so far as appears on the face of the papers, to show whether they were first, second or third mortgages. While the notes bore in the margin on their face statements that they were secured by mortgage on real estate, there was nothing on them to show whether they were or were not first mortgages. It was not necessary that the assignments should state whether the mortgages assigned were first mortgages or not, and presumably they did not. The plaintiff and her husband could have ascertained only by reading through the mortgage deeds whether they were first mortgages, and then they would have found the

information which they sought only in the covenant against incumbrances. If, under such circumstances, induced by the defendant's representations and their confidence in him, they were led to refrain from an examination of the papers, we do not think that it can be held as matter of law that they were guilty of such carelessness, or that the fact that the mortgages were not first mortgages was so obvious, as to preclude the plaintiff from recovering. The case of *Arnold* v. *Teel*, 182 Mass. 1, goes farther in its facts than it is necessary to go in this case to sustain the plaintiff's exceptions. See also *Savage* v. *Stevens*, 126 Mass. 207; *Freedley* v. *French*, 154 Mass. 339; *Burns* v. *Dockray*, 156 Mass. 135; *Brady* v. *Finn*, 162 Mass. 260; *Holst* v. *Stewart*, 161 Mass. 516; *Dean* v. *Ross*, 178 Mass. 397.

*Exceptions sustained.*