CLAUDE W. YORKE *vs.* W. RANDOLPH TAYLOR & others.

Suffolk. November 3, 1954. — March 8, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Fraud. Deceit. Sale,* Rescission, Sale of real estate. *Equity Jurisdiction,* Rescission.

A right of a purchaser to rescind a sale of real estate to him in 1953 because of his reliance on a false representation made by the seller as of his own knowledge that the assessed valuation for 1953 was the same as it had been for 1952 was not defeated by the fact that the seller did not know when he made the representation that the assessed valuation had been increased and made it in good faith without intent to mislead or to deceive the purchaser. [371]

In a suit in equity to rescind a sale of real estate by the defendant to the
plaintiff in 1953 on the ground that the defendant falsely represented
that the assessed valuation for 1953 was the same as it had been for
1952, a finding by the trial judge that the plaintiff sustained no damage
thereby was plainly wrong where reported evidence disclosed that the
valuation for 1952 was $12,500 but for 1953 was $26,000, resulting in
a tax $954.45 larger than it would have been at the lower valuation.
[371,374]

Discussion by SPALDING, J., of lack of diligence on the part of a plaintiff
in failing to ascertain the falsity of a representation made by the
defendant as a bar to the plaintiff's obtaining relief from the conse-
quences of reliance on the representation. [372–374]

A right of the purchaser to rescind a sale of real estate in 1953 because of
a false representation innocently made to him by the seller as of his
own knowledge that the assessed valuation for 1953 was the same as
it had been for 1952 was not precluded even though the "assessed
value . . . was a matter of public information equally within the
reach" of the purchaser and the seller and the purchaser relied on the
representation without ascertaining the truth by recourse to the
records in the assessors' office. [372,374]

BILL IN EQUITY, filed in the Superior Court on October
13, 1953.

The suit was heard by *Dowd, J.*

*Max L. Rubin,* for the plaintiff.

*Walter Powers, Jr.,* for the defendants.

SPALDING, J. The purpose of this bill in equity is to
rescind a sale of a parcel of real estate because of the alleged
fraud and misrepresentation of the defendants. The judge
made findings of material facts and ordered a decree to be
entered dismissing the bill. From a decree entered accord-
ingly the plaintiff appealed. The evidence is reported.

Facts found by the judge and by us are these. In August,
1953, and for some time prior thereto the defendants were
the owners of property at 265 Clarendon Street, Boston,
consisting of land, the building thereon, and furnishings.
On August 24, 1953, one Gould, a real estate broker, who
had been employed by the defendants to sell the property,
approached the plaintiff with a view to selling it to him.
At that time Gould submitted to the plaintiff a statement of
income and expenses which contained the words "Assessed
$12,500," and the plaintiff visited the property with Gould.

This was in fact the assessment for the year 1952. It appeared from the statement that during 1952 the building had been extensively remodeled (as in fact it had) at a cost of $22,000, and the plaintiff, after telling Gould that he did not understand why the assessment was so low, asked him if it had been raised for the current year, 1953. Gould told the plaintiff that he would find out. On the following day Gould asked Robert W. Taylor, his cobroker and a brother of the defendant W. Randolph Taylor, whether the assessment had been increased and Robert after communicating with his brother over the telephone informed Gould that the assessment was the same for 1953 as it was for 1952. Gould conveyed this information to the plaintiff and on August 26 the plaintiff, Gould, and Robert W. Taylor inspected the property.

On August 27, 1953, a purchase and sale agreement was executed by the plaintiff and the defendant W. Randolph Taylor whereby the plaintiff was to purchase the property for the sum of $30,000. The property was to be sold subject to an existing first mortgage on which there was a balance due of $19,738.72, and the plaintiff was to pay the remainder of the purchase price by note and second mortgage in the amount of $5,500, and cash in the sum of $4,671.66.

After the agreement was executed the plaintiff employed an experienced attorney to examine the title and to act for him in the purchase of the property. The attorney checked the public records relating to municipal liens touching the property but these records revealed nothing beyond the year 1952. On the basis of this information he reported to the plaintiff that the assessment for that year was $12,500. He made no inquiry, however, at the assessors' office as to the assessed value. Papers were passed on September 17, 1953, and the plaintiff's attorney and Robert W. Taylor apportioned taxes on the basis of an assessment of $12,500.

The assessment for the year 1953 was in fact $26,000, an increase of $13,500 over the assessment for 1952. The tax bill for 1953 showing this increased assessment had been mailed to the defendants at 265 Clarendon Street on August

2, 1953, before any negotiations for the sale of the property to the plaintiff had commenced. The defendants did not reside at this property and since January, 1953, it was under the management of R. M. Bradley & Co., Inc.

The judge found that the defendants did not know that the assessed valuation had been increased when the information relating to the income and expenses of the property was submitted to the plaintiff. The judge further found that the defendants acted in good faith and had no intention of misleading or deceiving the plaintiff. These findings were supported by evidence and are not plainly wrong. But these findings would not defeat the right to rescind. In this Commonwealth one who has been induced to enter into a contract in reliance upon a false though innocent representation of a material fact susceptible of knowledge which was made as of the party's own knowledge and was stated as a fact and not as matter of opinion is entitled to rescission. *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403. *Bates* v. *Cashman,* 230 Mass. 167, 168. *Rudnick* v. *Rudnick,* 281 Mass. 205, 208. *Enterprises, Inc.* v. *Cardinale,* 331 Mass. 244.

The judge, however, made other findings which must be considered. He found that the plaintiff was not misled by the representation of the defendants that the assessment was $12,500, and he also found that the plaintiff sustained no damage. These findings under the familiar rule must be upheld unless they are plainly wrong, but we are of opinion that evidential support for them is lacking. The plaintiff obviously could not have relied on any statement by his attorney as to the 1953 assessment because the attorney reported that he found only the 1952 assessments available in the records examined by him. The assessment on the property was undoubtedly a matter of materiality and it seems clear from the evidence that both the plaintiff and the defendants so considered it. The defendants included the information in the statement of income and expenses which they caused to be furnished to the plaintiff. And the plaintiff's inquiries to the defendants' brokers concern-

ing the assessment show that he was seeking information on a matter he also considered important. Where, as here, the tax rate was $70.70 per thousand for the year 1953, concern as to what the property was assessed for is readily understandable. The judge in his findings seems to have been influenced by the fact that the property was worth what the plaintiff paid for it.[1] But the plaintiff does not seek rescission on the basis of any misrepresentation touching the value of the property. Rescission is sought on the ground that the amount of the assessment was misrepresented.

But there is another finding which we must also consider. The judge found that the "assessed value . . . was a matter of public information equally within the reach of plaintiff and the defendants." This suggests that even had the plaintiff relied on the defendants' representation such reliance would have been unreasonable and unjustified because the plaintiff could easily have ascertained the truth by recourse to the records in the assessors' office.

It is true that statements may be found in some of our decisions to the effect that a plaintiff ought not to obtain relief from the consequences of false representations where he has failed to use due care and diligence in protecting his rights. The reasoning of these cases appears to be that the court should exhibit no greater interest in protecting a plaintiff's rights than he himself has shown. *Brown* v. *Castles,* 11 Cush. 348, 350. *Nowlan* v. *Cain,* 3 Allen, 261, 263–264. *Silver* v. *Frazier,* 3 Allen, 382. *Mabardy* v. *McHugh,* 202 Mass. 148, 151. See *Manning* v. *Albee,* 11 Allen, 520, 522; *Savage* v. *Stevens,* 126 Mass. 207, 208; *Holst* v. *Stewart,* 161 Mass. 516, 522; *Brady* v. *Finn,* 162 Mass. 260, 266; *Whiting* v. *Price,* 172 Mass. 240, 241; *Lee* v. *Tarplin,* 183 Mass. 52, 57; *Thomson* v. *Pentecost,* 206

---

[1] The findings include the following: "I find that the plaintiff knew that the assessed value of property was not its true market value, and that he knew that the property was worth much more than $12,500 by his assumption of the several obligations for the payment of the purchase price of said premises. . . . I find that it was obvious, and that the plaintiff knew the 'assessed value of $12,500' was no evidence of the real market value of said premises."

Mass. 505, 512. Or, as was said in *Silver* v. *Frazier*, "The law will not relieve those who suffer damages by reason of their own negligence or folly" (page 384). But the trend of modern authority is opposed to this philosophy. Restatement: Torts, § 540. Prosser on Torts, § 88. Harper on Torts, § 224. *Franklin* v. *Nunnelley*, 242 Ala. 87, 89. *Halla* v. *Chicago Title & Trust Co.* 412 Ill. 39, 46. *Nash Mississippi Valley Motor Co.* v. *Childress*, 156 Miss. 157, 162–163. *Wright* v. *Noyes*, 80 N. H. 172, 174. *Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40, 49. *Harrell* v. *Nash*, 192 Okla. 95, 100. *Crompton* v. *Beedle*, 83 Vt. 287, 300–302. Certainly where a defendant has wilfully made false representations with intent to deceive he ought not to be relieved of liability because of his victim's lack of diligence, and the authorities just cited are to this effect. "No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool." *Chamberlin* v. *Fuller*, 59 Vt. 247, 256. And support for this view is not lacking in our own decisions. *David* v. *Park*, 103 Mass. 501. *Commonwealth* v. *Lee*, 149 Mass. 179. *Rollins* v. *Quimby*, 200 Mass. 162, 163. *Reggio* v. *Warren*, 207 Mass. 525. In *Rollins* v. *Quimby* the defendant falsely represented to the plaintiff that certain mortgages which he was offering to the plaintiff for sale were first mortgages whereas they were second and third mortgages. The defence was that the plaintiff did not use due diligence and could readily have ascertained from the documents themselves and the records that the mortgages were not first mortgages. It was held that this defence did not preclude recovery, the court saying at page 163, "The law does not attempt to save parties from the consequences of their own improvidence and negligence; but it looks with even less favor upon misrepresentation and fraud. And, accordingly, in later decisions, this court has manifested a disinclination to extend the immunity of vendors for statements or representations made by them beyond the limits already established." See *Kabatchnick* v. *Hanover-Elm Building Corp.* 328 Mass. 341. But whatever our rule has been formerly on the sub-

ject of diligence — and it is not easy to reconcile all that has been said — we prefer the rule of the Restatement that "The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation." Restatement: Torts, § 540.

We recognize, of course, that the representations of the defendants here were not consciously false. But as pointed out above that does not deprive the injured party of the right to rescind. In this Commonwealth, where the rule is stricter than that in many jurisdictions, a false though innocent representation of a fact made as of one's own knowledge may be the basis of liability. The same legal consequences attach to this type of representation as to one that is deliberately and consciously false. On principle, lack of diligence on the part of the victim ought not to have any better standing as a defence to rescission in the one case than in the other, and we are not disposed to treat these situations differently. The plaintiff here was not relying on a statement of opinion nor on a representation that was either preposterous or palpably false. See Restatement: Torts, § 541. He could reasonably rely on the representation as being a fact within the defendants' knowledge and he was not obliged to go further and ascertain its truth.

We are of opinion that, in the light of all the evidence, the finding that the plaintiff was not misled by the representations of the defendants cannot stand. And that is likewise true of the finding that the plaintiff sustained no damage. By reason of the increased assessment in 1953 the plaintiff was faced with a tax bill which was larger by $954.45 than his bill would have been on the basis of an assessment of $12,500.

It follows that the decree dismissing the bill must be reversed and a new decree entered rescinding the sale, ordering the defendants upon reconveyance of the property to return the consideration paid by the plaintiff, and cancelling the $5,500 note and the mortgage securing it. The plaintiff is to have costs of this appeal.                    *So ordered.*