Welsh, P.J.
This is an action for damages based upon certain alleged misrepresentations. It is alleged that the plaintiffs entered into an agreement with certain persons who were originally defendants in this action, whereby the plaintiffs agreed to purchase a lot of land in Kingston, Massachusetts. Pursuant to the terms of the contract, the plaintiffs paid the sum of $500.00 to the defendant Beck, the broker, to be held in escrow. The agreement provided that upon receipt of a bank commitment in accordance with its terms, the plaintiffs would pay an additional deposit of $5,500.00, and that the entire *167 amount was to be released to the sellers. The complaint further alleges that the defendant broker informed the plaintiffs that a bank commitment had been made in accordance with the agreement; that such information was false and inaccurate in that it later appeared that the bank’s commitment to advance the funds was not absolute, but was conditional upon a satisfactory report of the credit of the plaintiffs. The bank was dissatisfied with the plaintffs’ credit and declined to proceed with the loan. The contemplated purchase and sale was not effected due to the unavailability of mortgage loan proceeds. The sellers expended the deposit money to acquire the lot in question and the deposit was not refunded to the plaintiffs. The plaintiffs’ theory is that the broker’s failure to inform the plaintiffs that the commitment was conditional upon credit approval proximately caused the loss.
So much of the action as concerns the plaintiffs’ claim against the sellers was disposed of by virtue of an agreement for judgment. The case proceeded to trial against the broker, resulting in a finding for the defendant. The plaintiffs’ claim to be aggrieved by the denial of certain of their requests for rulings, an alleged inconsistency between certain of the court’s findings and conclusions of law, and the action by the court on an evidentiary matter.
We conclude that there was ho prejudicial error of law committed by the trial judge; that there was no inconsistency, and that the evidentiary rilling sought to be reported is not properly before us.
At the trial, there was evidence tending to show the following:
The plaintiff, a former secretary of the defendant Beck, and her husband entered into an agreement to purchase a lot in Kingston for $70,400.00. A deposit of $500.00 was paid, and an additional $5,500.00 was to be paid upon bank commitment. On or about November 14, 1980, Beck informed the plaintiffs that the Quincy Savings Bank had issued the mortgage .commitment, and that written confirmation would follow shortly. Accordingly, the plaintiffs paid the additional deposit. By letter dated December 11,1980, the plaintiffs were informed that the bank agreed to grant the mortgage loan, subject to receipt of a favorable credit report. The amount and terms of the loan were satisfactory to the plaintiffs and met the requirements of the mortgage contingency clause. However, on December 18,1980, the bank did not approve the loan due to an unfavorable credit report.
On December 4,1980, Beck received a call from Mr. William Greenspan, an officer of the Quincy Savings Bank. Beck was told by Greenspan that the bank had decided to grant the loan and that a letter would follow confirming the oral commitment. Beck then passed on this information to the plaintiffs, who then caused the additional deposit to be paid. There was evidence that it was usual and customary for brokers to act upon such oral commitments, and that the particular real estate agency with whom Beck was affiliated had done business on such basis with the Quincy Savings Bank with no problems.
The agreement provided that the additonal $5,500.00 was payable upon bank commitment, as follows:
The agreed purchase price for said premises is seventy-thousand, four hundred and 00/100 ($70,400.00) dollars, of which $500.00 has been paid as a deposit this day and $5,500.00 upon bank commitment; $64,000.00 are to be paid at the time of delivery of the deed in cash, or by certified, cashier’s treasurer’s or bank check - Total $70,400.00
The language in the purchase and sales agreement providing for the release of all deposits held to the sellers is as follows:
*168 All deposits made hereunder shall be held by the broker, Beck & Carmichael, Inc., as agent for the seller, subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. All deposits to be released to seller upon receipt of bank commitment.
The judge found as a fact that on December 4, 1980, William Greenspan, a duly authorized representative of the Quincy Savings Bank, orally advised the defendant, Richard Beck, that the plaintiffs had a mortgage commitment with respect to the lot in question, and that a written confirmation would follow. There was no evidence that Beck was advised by the bank that the commitment was conditional. The judge concluded that the plaintiffs failed to prove that Beck made any misrepresentations to the plaintiffs.
1. In order to recover damages for reasonably relying upon a representation of material fact [see Chatham Furnace Co. v. Moffatt, 147 Mass. 403 (1888)] which turns out to be false, it is necessary that the plaintiffs prove that a statement of fact (i.e. a statement susceptible to actual knowledge) was made either with the actual intent to mislead, or that the statement was made recklessly, that is asserted by the defendant as true without any basis for belief in its truth or falsity [see Yorke v. Taylor, 332 Mass. 368 (1955),] or, in the case of a defendant in the course of his business or profession and having a pecuniary interest in the transaction, fails to use reasonable care and competence in obtaining or communicating the information. Restatement (Second) of Torts § 552; Craig v. Brooks Co., 351 Mass. 497, 501 (1967).
There is no evidence in the report that Beck intended to deceive the plaintiffs or had so much as an inkling that the information that the bank had issued a mortgage commitment was inaccurate or misleading in that a credit check was also required. There is no suggestion from the evidence that he garbled the message received from the bank officer. Nor was it made to appear that Beck was lacking in prudence in not insisting upon receipt of written confirmation of the commitment. In fact, the weight of the reported evidence is to the effect that it was usual, customary and reasonable to rely upon such oral commitments. In short, there was no evidence to warrant a finding that Beck had made a negligent misrepresentation of material fact. The judge correctly found for the defendant. Lawton v. Dracousis, 14 Mass. App. Ct. 164, 171 (1980).
2. At the trial, the judge admitted de bene a document purporting to be the credit report which led the bank not to consummate the mortgage loan. When proper authentication was not forthcoming, the judge ordered that the document be excluded. The plaintiff claims to be aggrieved by reason of the alleged failure to strike certain oral testimony admitted collateral to the credit report. This claim of error is not properly before us, since the defendant failed to comply with Rule 64 (a), Dist./Mun. Cts. R. Civ. P. by reducing to writing this request for report based upon the evidentiary ruling within five days after the close of the evidence. Krock v. Consolidated Mines & Power Co., 286 Mass. 177, 180 (1934). Even if we were to assume the question is properly before us, no prejudice appears from such failure to strike testimony even if we indulge the appellant the further assumption that such evidence should have been excluded. The court found, correctly, we think, that there was no representation which afforded the plaintiff a basis for relief. The reasons for the bank’s refusal to consummate the loan are immaterial. Likewise, the validity of the bank’s reasons are not germane.
*169 3. We note in passing that the judge assigned as a reason for the denial of certain requests for rulings that a finding of fact was called for. In several cases, they properly called for rulings of law in as much as the interpretation of a written contract was involved. Tri-City Concrete Co., Inc. v. A.L.A. Const. Co., 343 Mass. 425, 427 (1962); Sechrest v. Safiol, Mass. Adv. Sh. (1981) 1150, 1152, n. 3. It is clear beyond question that the judge correctly construed the contract and the denial of the requests was harmless error. Most of the requests were properly denied on the grounds that the judge found that no false representation was made.
Report Dismissed.