Fremont-Smith, J.
The Department of Revenue of the Commonwealth of Massachusetts (“DOR”) brings this action against the defendant, The Madhouse, Inc. (“Madhouse”), seeking rescission of a settlement agreement entered into by DOR and Madhouse and seeking injunctive relief pursuant to G.L.c. 69H, §§2 and 3. DOR alleges that Madhouse made a material misrepresentation to DOR prior to execution of the agreement, and that DOR relied on this alleged misrepresentation in deciding to enter into the settlement agreement. Madhouse now moves for summary judgment, contending that, 1) the action is barred by the applicable statute of limitations and 2) in any event, plaintiff did not reasonably rely on the alleged misrepresentation. For the reasons stated below, Madhouse’s claim for summary judgment is ALLOWED.
BACKGROUND
Defendant Madhouse is in the direct mail advertising business, printing and selling advertising inserts and envelopes to its “Super Coup” franchisees. In 1988, Madhouse began charging a five percent state sales tax on the printed materials sold to its franchisees. Although the question whether or not such tax was actually ever collected by Madhouse is disputed by the parties, it is further undisputed that, as early as 1990, the DOR had concluded that “sales tax collected by Madhouse has not been paid to the Commonwealth.” It is further undisputed that Mailbox neither reported nor paid over this sales tax to DOR.
DOR completed an audit of Madhouse in the spring of 1989, and subsequently issued a Notice of Intention to Assess sales tax for the period of July 1,1983 to March 31, 1989, in the amount of $233,014.51. Madhouse contested the assessment, but DOR’s Appeal and Review Bureau upheld it on September20,1990. On September 28, 1990, DOR sent Madhouse a revised notice of assessment of $327,834.12 for the same time period, and Madhouse filed an application to abate that assessment. On June 21, 1991, Madhouse appealed to the Massachusetts Appellate Tax Board.
While that appeal was pending, Madhouse and DOR entered into a settlement agreement on October 16, 1992, under which Madhouse agreed, inter alia, to withdraw its appeal, to pay DOR $100,000, and to pay sales tax to DOR beginning on October 19, 1992. In return, DOR agreed to reduce its sales tax assessment from the period of July 1, 1983 to March 31, 1989 to $100,000 and agreed not to assess Madhouse or its franchisees any sales tax from March 31, 1989 through to October 16, 1992, the date of the settlement agreement.
Just prior to the October 16,1992 settlement agreement, on October 1, 1992, Madhouse’s counsel represented in writing to DOR that it had billed, but not collected, sales tax from its franchisees from the period of January 1, 1988 to October 1992 (a position which Madhouse continues to maintain), and DOC relied on this representation to enter into the settlement agreement. In April 1993, Enrique Barkey, then Chief of DOR’s New England Audit Bureau, reviewed both the 1989 audit file and the settlement agreement, and concluded that Madhouse had accrued and collected sales tax that was not turned over to DOR, so that the settlement agreement had been induced by misinformation. He reported his findings to then Deputy Commissioner Bernard Crowley and recommended that the assessment be reinstated and the settlement agreement rescinded. Based on Barkey’s findings, DOR’s Audit Division completed a second audit of Madhouse on March 25, 1994, and determined that Madhouse collected approximately $183,000 in sales tax from its franchisees between January 1, 1988 and October 1, 1992.
DOR then filed this complaint on September 27, 1996, seeking rescission of the settlement agreement because of the alleged misrepresentation made by Madhouse, contending that it reasonably relied on this alleged misrepresentation in entering into the settlement agreement with Madhouse. DOR also seeks injunctive relief pursuant to G.L.c. 69H, §§2 and 3, directing Madhouse to surrender to DOR all sales tax collected from its franchisees between January 1, 1988 and October 1, 1992.
Madhouse moves for summary judgment, contending that based on the undisputed facts, (1) rescission of the settlement agreement is barred by the applicable statute of limitations and (2) DOR’s reliance on Madhouse’s alleged misrepresentation was in any event unreasonable.
DISCUSSION
In moving for summary judgment, the defendant has the burden “to show by credible evidence from [its] affidavits and other supporting materials that there is no genuine issue of material fact and that [it is] entitled, as a matter of law, to a judgment.” Smith v. Massimiano, 414 Mass. 81, 85 (1993), citations omitted. The opposing party “may not simply rest on its pleadings or general denials, he must ‘set forth specific facts’ showing that there is a genuine, triable issue.” Id. at 86, quoting Rule 56(e).
“[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Massimiano at 86, quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
STATUTE OF LIMITATIONS
Summary judgment is appropriate with respect to a statute of limitations defense where there is no *328 dispute as to essential evidentiary facts controlling the application of the statute of limitations. Catrone v. Thoroughbred Racing Ass’ns of North America, 929 F.2d 881, 886 (1st Cir. 1991), citing Fidler v. E.M. Parker Co., 394 Mass. 534 (1985). Once a statute of limitations defense is raised for summary judgment purposes, the plaintiff then has the burden of proving that its claim was filed within the applicable statute of limitations. Riley v. Presnell, 409 Mass. 239, 243-44 (1991).
Mailhouse asserts that the three-year tort statute of limitations applies here because DOR’s claim of misrepresentation sounds in tort, that in applying the discovery rule, the statute of limitations started to run no later than June of 1993, and that because DOR filed its complaint thirty-nine months after June, 1993, its claim is time-barred.
DOR contends, however, that because it seeks rescission of the settlement agreement, it is not barred by the tort period of limitations, but that such an action for equitable relief is timely so long as it is brought with reasonable promptness. In the alternative, DOR argues that, based on the discovery rule, the time at which any applicable statute of limitations accrued was not until after DOR completed its second audit on March 25, 1994, so that its September, 1996 complaint is not time-barred by the three-year statute of limitations.
In determining which if any statute of limitations applies to a claim, the court must look to the essential nature of that claim. Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 636 (1992), citing Hendrickson v. Sears, 365 Mass. 83 (1974). As DOR’s complaint alleges that Mailhouse made “material misrepresentations to [DOR] prior to the agreement’s execution,” complaint ¶1, and seeks recession on that basis, the essential nature of the action is for fraudulent misrepresentation, for which the applicable statute of limitations is three years. Kent v. Dupree, 13 Mass.App.Ct. 44, 47 (1982), McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 576 (1995), rev. denied, 420 Mass. 1107 (1995).
DOR’s argument that because it seeks the equitable relief of rescission of a contract, “reasonable promptness” is the only requirement it must meet in filing its claim, is incorrect. In the cases cited by plaintiff, only Solomon v. Berger, 19 Mass.App.Ct. 634, 638-9 (1985), is on point, and is dicta, whereas the great weight of authority of the Massachusetts cases holds that statutes of limitations apply to suits in equity as well as in law. Stoneham Five Cents Savings Bank v. Johnson, 295 Mass. 390, 395 (1936), Ballentine v. Eaton, 297 Mass. 389, 394 (1937), and Kagan v. Levenson, 334 Mass. 100, 103 (1956), cited in Desmond v. Moffie, 375 F.2d 742 (1st Cir. 1967). Moreover, tort statute of limitations defenses have been specifically applied to rescission claims. Marvel v. Cobb, 200 Mass. 293, 296-97 (1908); Falk v. Levine, 66 F.Sup. 700, 702 (D.Mass. 1946).
DOR’s argument that only the “reasonable promptness” standard should be applied to its claim, rather than any specific statute of limitations, is further rebutted by Gilbert v. City of Cambridge, 932 F.2d 51 (1st Cir. 1991), cert. denied, 502 US 866 (1991). In Gilbert, the plaintiffs attempted to circumvent the three-year tort statute of limitations (which applied to their 42 U.S.C. 1983 claim) by focusing on the equitable nature of the relief sought, declaratory judgment. The court found this argument meritless, stating, “to prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labeling . . . courts must necessarily focus upon the substance of an asserted claim as opposed to its form." Id., at 57. The court further held that, “Where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy.” Id.
As the court concludes that the three-year tort statute of limitations applies here, the next issue to be addressed is the time when DOR’s cause of action accrued. The discovery rule holds that a cause of action for the tort of fraudulent misrepresentation accrues at the time a plaintiff knew or reasonably should have known of the misrepresentation. See Friedman v. Jablonski, 371 Mass. 482, 485-86 (1976), cited in Riley v. Prisnell, 409 Mass. 239 (1991). In determining this, the test is what a reasonable person in the plaintiffs position would have known or on inquiry would have discovered based on the events that had occurred. Bowen v. Eli Lilly & Co., 408 Mass. 204, 210 (1990). Thus, the discovery rule suspends the running of the statute of limitations only until such time that the wrong committed against the plaintiff and its source are reasonably discoverable, and does not postpone the running of the statute of limitations until the plaintiff is on notice of every fact which must be proven in support of a claim. White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982). So long as the plaintiff is aware or should be aware that a wrong may have been committed, and its source, the statute of limitations starts running.
In this case, the plaintiff is a government entity, and is charged with knowledge of a wrong once “those disinterested persons who are capable of acting on behalf of the [government entity] knew or should have known of the wrong.” Town of Nantucket v. Beinecke, 379 Mass. 345, 351 (1979).
Based on the undisputed facts here, DOR was aware or should have been aware of the wrong committed against it by Mailhouse no later than June of 1993. In April 1993, New England Audit Bureau Chief Barkey had notice that Mailhouse collected sales tax from its franchisees, shortly after he reviewed the 1989 audit file and the settlement agreement. In his deposition, Barkey clearly affirmed his knowledge in April *329 1993 of Mailhouse’s alleged misrepresentation that it had collected no sales tax from its franchisees:.
Q: Let me ask you this question: When you got this file sometime I think in April of 1993 or on or about April, did you read it carefully?
A: Yes, I did. Yes, I did.
Q: And having read it carefully and having analyzed the contents, you reached the firm conclusion that Madhouse had collected?
A: That Madhouse had invoiced, accrued taxes and collected the tax. Yes.
Barkey Deposition, p. 39, ll. 6-14. Thereafter, in April or May of 1993, Barkey recommended to DOR Deputy Commissioner Crowley that DOR reinstate the assessment and rescind the settlement agreement.
DOR contends that although Barkey was aware, in April of 1993, that Madhouse may have collected the sales tax, he was not aware of Mailhouse’s alleged misrepresentation to DOR that it had not collected it. However, Barkey testified that in April or May of 1993, he also discussed his findings with Litigation Bureau Chief Robert Carleo, who told Barkey that if Madhouse did collect the sales tax, it misrepresented the facts to DOR prior to execution of the settlement agreement. Furthermore, in June of 1993, Barkey had a second conversation regarding Madhouse with Crowley, during which they discussed reinstatement of the assessment, rescission of the settlement, and Barkey’s recommendation that DOR’s Litigation Bureau communicate to Madhouse DOR’s intent to rescind the agreement.
Based on these undisputed facts, there can be no reasonable dispute of fact that, by no later than June of 1993, DOR’s New England Audit Bureau Chief, Deputy Commissioner and Litigation Bureau Chief were all aware of the alleged fraudulent misrepresentation made by Madhouse to DOR, and that these DOR employees were “disinterested persons . . . capable of acting on behalf of [DOR].” Town of Nantucket, 379 Mass. at 351.[1] Consequently, the latest point at which any reasonable juiy could find that DOR knew, or should have known, of its cause of action against Madhouse, was in June of 1993.
Thus, DOR’s argument that the cause of action only accrued after the March, 1994 audit definitely confirmed the above, misconstrues the application of the discovery rule.
The [discovery rule] does not suspend the running of the statute of limitations period pending confirmation of the plaintiffs injury or its cause, but simply stops the clock until occurrence of an event or events . . . that were reasonably likely to put the plaintiff on notice that someone may have caused her injury. Bowen, 408 Mass. 204, 207.
Cambridge Plating Co. v. NAPCO, Inc., 991 F.2d 21, 29 (1st Cir. 1993).
Since, based on the undisputed facts, DOR was on notice of its injury at least by June of 1993,[2] and since the March 1994 audit simply confirmed Barkey’s earlier findings that Madhouse had actually collected sales tax, the applicable statute of limitations began running in June of 1993. It follows that DOR’s lawsuit, filed in September of 1996 (three months after the statute’s deadline) is time-barred.
UNREASONABLE RELIANCE
Even if not time-barred, to prevail on its misrepresentation claim DOR would have to prove that it relied on Madhouse’s alleged misrepresentation in entering into the settlement agreement and that such reliance was reasonable. See Krock v. Lipsay, 97 F.3d 640, 646 (2nd. Cir. 1996). It is true that under Massachusetts law, DOR is not barred from recovery for unreasonable alliance simply because it may have faded to reasonably investigate the truthfulness of Mailhouse’s representation. See Yorke v. Taylor, 332 Mass. 368, 373-74 (1955), cited in Zimmerman v. Kent, 31 Mass.App.Ct. 72 (1991). See also: Restatement (Second) of Torts, §540 (1976). As stated in Yorke, “No rogue should enjoy his ill-gotten plunder for the simple reason his victim is by chance a fool.” Id. However, DOR may not recover under a misrepresentation claim if Mailhouse’s representation was preposterous or palpably false. Yorke, supra, at 373-74. Moreover, DOR “may not reasonably rely on a previously-made false representation once the truth of the matter has come to light.” Krock, supra, 97 F.3d at 647. See Trifiro v. New York Life Ins. Co., 845 F.2d 30, 33 (1st Cir. 1988). Such unreasonable reliance is a complete bar to recovery. Mahaney v. John Hancock Mutual Life Ins. Co., 6 Mass.App.Ct. 919, 920 (1978). See also Restatement (Second) of Torts §541 (1976)(“The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him”).
Although unnecessary to this Court’s decision, in view of the statute of limitations bar, it is difficult to see, based on the undisputed facts, how any reasonable jury could find that DOR, in entering into the settlement agreement, acted reasonably in relying on Mailhouse’s representation that it had not collected sales tax from its franchisees. The alleged misrepresentation upon which DOR claims it reasonably relied was contained in the coversheet of an October 1, 1992 facsimile transmittal, in which Mailhouse’s attorney Domenic Finelli states, “Enclosed please find documents which you requested to substantiate that my client did not collect taxes from 1988 to the present.” DOR contends that its reliance on this statement was reasonable because Finelli was bound by the Canons of Ethics and Disciplinary Rules to not knowingly make false statements of law or fact, and because of Finelli’s past professional relationship with DOR. Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 936 (1st Cir. 1985). While Finelli’s statement appeared *330 on the coversheet, however, the facsimile requested by DOR, in the next four pages, indicated that, under accepted accounting principles, sales tax had been collected. Barkey Deposition, tr. 89-90, 100-12; McIssac Deposition, tr. 35-38; Margarida Deposition, tr. 42.
Moreover, prior to the October 16, 1992 settlement agreement, DOR’s legal division had already become aware that Mailhouse had collected sales tax from its franchisees. Thus, on September 20, 1990, DOR’s Appeal and Review Bureau sent “a notice of intervention to access sales/use tax for taxable periods July, 1983 through March, 1989,” stating that “sales tax collected by Mailhouse has not been paid to the Commonwealth.” In addition, a letter from Mailhouse’s attorney to DOR’s then Litigation Chief Thomas Hammond dated November 9, 1990 contains notes to Mailhouse’s 1989 Audited Financial Statement, which states, under the “Sales Tax” heading, “During fiscal year 1988, the Company began collecting sales taxes . . . however, no sales taxes were remitted to the Commonwealth during the year.”
Thus, although Finelli stated that the documents enclosed substantiated that no tax was collected, and DOR was not legally required to independently investigate the truth of this assertion, the enclosed documents themselves belied his contention and the financial records of the company, as audited by DOR, had already indicated Mailhouse had collected the tax. In short, it is difficult to see how a jury could find that DOR reasonably relied on Finelli’s statement on the cover sheet, based upon the knowledge it already possessed and the contradictory information contained in the body of the transmission. It’s argument that its reliance was reasonable because its Audit Division failed to address the issue of tax collection until the March, 1994 audit, is thus not based on, but is contradicted by, the undisputed facts in the record.
“Confronted by such a conflict a reasonable person investigates matters further; he receives assurances or clarification before relying.” Trifiro, supra at 33. If, as appears, DOR acted “in a way contrary to [its] own acknowledged understanding of the facts, [its] acts must be deemed unreasonable as a matter of law.” Id.
ORDER
For the foregoing reasons, it is ORDERED that the motion for summary judgment of the defendant The Mailhouse, Inc. is ALLOWED. Judgment is to enter for Mailhouse, Inc on its counterclaim. It is further ordered that the settlement agreement of October 16, 1992 is in full force and effect, and the plaintiff Department of Revenue, is hearby enjoined from initiating any assessment of sales taxes from The Mail-house, Inc. for the period comprised by the settlement agreement, July 1, 1983 to October 16, 1992.

 DOR’s contention in its brief and affidavit of Crowley, that the Legal Division generally did not bother to consult with the Audit Division regarding prospective settlements of tax disputes before the Appellate Tax Board, is not only mind-boggling as a public policy matter, at least where audit information is at issue, but is legally irrelevant.

 New England Audit Bureau Chief Barkey concluded, in 1994, that Mailhouse had collected the tax based upon his inspection of the very same documents DOR had in its possession at the time the settlement agreement was executed. Barkey Deposition, tr. 6-14, 39.